(No. 15169.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ELMER HALL, *et al.* Plaintiffs in Error.

*Opinion filed April 18, 1923.*

1. CRIMINAL LAW—*when evidence of independent crime is admissible to rebut alibi.* It is the general rule that facts tending to prove the commission of independent crimes are not admissible, but in a prosecution for robbery, where the identity of the accused is disputed and the defense is an alibi, witnesses who were held up on the same evening shortly after the robbery of the prosecuting witness should be permitted to testify to such circumstances of the second hold-up as tend to identify the defendants as their assailants and to rebut the evidence of an alibi.

2. SAME—*general rule as to when evidence of an independent crime is admissible.* Circumstances connected with an independent crime are admissible where they tend to prove the offense charged, and they are not rendered inadmissible merely because they disclose the commission of another offense; but the circumstances cannot be given in detail, and only those facts which are relevant and which tend to prove defendant's guilt of the crime charged can be admitted in evidence.

3. SAME—*the defendant must object to or move to exclude improper evidence.* It is not the duty of the trial court to exclude or stop the introduction of improper and irrelevant testimony where the defendant makes no objection to the same and does not move to exclude it after it has been introduced.

WRIT OF ERROR to the Circuit Court of Winnebago county; the Hon. ROBERT K. WELSH, Judge, presiding.

KNIGHT & MOHR, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, WILLIAM JOHNSON, State's Attorney, GEORGE C. DIXON, and A. B. LOUISON, for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Elmer Hall and Francis Kane (herein referred to as defendants) were convicted in the circuit court of Winnebago county of the crime of robbery of Lawrence Mikolayczyk, and on November 1, 1922, the court sentenced them to the reformatory at Pontiac, it being stipulated that Hall was twenty-one and Kane twenty-three years old. This writ of error is prosecuted to review the judgment.

About 7:55 in the evening of June 22, 1922, Lawrence Mikolayczyk, the prosecuting witness, and his friend, Louis Baranowski, while on Fifteenth avenue, in the city of Rockford, were invited to take a ride by two men who came along there in an automobile. They did not know the men in the machine but told them that they were going to a carnival on Kishwaukee street, and the men in the car said they were going for a spin and would take them to the carnival grounds. The two men occupied the front seat of the car and Mikolayczyk and Baranowski got into the back seat. The car was then driven south on Kishwaukee street, and when they arrived at the carnival grounds one of the men in the front seat said, "You don't call that no carnival; let's go for a ride out to the camp." The prosecuting wit-

ness replied, "We don't go any further; we will go back."
They finally all went to Camp Grant, and from there drove
back on Kishwaukee street to Seventeenth avenue, turning
off Kishwaukee street onto said avenue. At that corner
the driver of the automobile made some remark about fix-
ing the lights of the automobile and stopped the car. He
got out and worked with the lights for a few minutes and
then both he and his companion drew their revolvers and
ordered Mikolayczyk and Baranowski to hold up their
hands. The man who had been sitting beside the driver
held his revolver at the breast of complaining witness and
took away from him a dollar bill in money. The driver
pointed his revolver at Baranowski and took fifty cents
from him. Mikolayczyk and his friend then jumped out
of the automobile and ran away from the robbers. The
robbery occurred about 8:30 P. M., about thirty-five min-
utes after the parties had started on the automobile ride.
The corner of Seventeenth avenue and Kishwaukee street
is in the extreme southeast part of the city of Rockford.
Both victims of the robbery testified that there were at that
time a spare tire and a box of tools in the rear part of the
automobile, and Baranowski testified that he became en-
tangled in the tire when he first made his attempt to es-
cape, and that the car was a Dodge car. Mikolayczyk
testified that it was a Buick or a Dodge and that it was
not a new one. Both of them identified the two defend-
ants on the trial and testified that they were the men who
robbed them. They did not know either of the defendants
before the evening of the robbery but were able from their
observation of them on that evening to identify them as
the men who robbed them. They had an opportunity to
see the defendants and observe them for about thirty-five
minutes, and there was a light on the corner of Seven-
teenth avenue and Kishwaukee street, where they were
robbed. Neither of the witnesses was able to describe the
clothing worn by the defendants, except that Mikolayczyk

testified that Kane, whom he designated as the "short fellow," had on a gray cap, and Hall, called by him the "big fellow," had on a blue cap.

After the robbery the robbers drove the car toward the main part of town. About fifteen minutes after this occurrence, or at 8:45, police officer Webber, stationed at the corner of West State and Church streets, saw a Dodge automobile driven by Hall and carrying two persons whom he did not recognize. The automobile came from the east and went west on State street, on the wrong side thereof, at a high rate of speed, estimated by the officer at 35 or 40 miles an hour. The officer attempted to stop the automobile but was unable to do so, and the driver turned north on Church street toward Garfield avenue, apparently without lessening the speed of the car. The officer positively identified the driver of the car as Hall, whom he had previously known as a taxi driver in Rockford, but did not know the other two men in the car.

Three witnesses, Bayard Johnson, Armour Johnson and Frank North, testified that about nine o'clock of the same evening an automobile answering the description of the one used in the robbery in question and driven by a person identified by them as Hall, stopped at the intersection of Ridge and Garfield avenues, where the witnesses were, northwest of the point where the officer was stationed and about a mile and a quarter north of State street. Hall and a man answering the description of Kane got out of the machine and attempted to rob them. Hall came up to them and pointed a revolver at Armour Johnson and ordered him to put up his hands. While Hall was going through his pockets Johnson reached down and grabbed the gun away from him and ordered him to throw up his hands. Hall ran away and Johnson fired four shots at him with the revolver. The other man at that time was holding up North, and when Armour Johnson began shooting at Hall the other robber fired at Bayard Johnson with a revolver

and hit him twice. Immediately thereafter both men ran to the car and drove away. The witnesses were not able to identify Kane as the other party to the attempted robbery, but two of them testified that the robber with Hall had on a blue shirt, and one of them stated that he did not have on a coat and was in his shirt sleeves. About one o'clock of the same night a Dodge automobile driven by Hall, accompanied by Kane and a soldier from Camp Grant by the name of Joe Friedman, was seen by police officers in the down-town district of Rockford. One of the officers ordered the men in the car to turn on their lights. The officers pursued the automobile and after a chase of about thirteen blocks arrested the three men in the machine. The automobile had a spare tire and a box of tools in the back seat when overtaken by the officers, and the top of the automobile on one side was bent down and the hood was covered with oil. Neither of the defendants then had a revolver.

The defense was an alibi. The testimony of the defendants was to the effect that they were together in a Dodge car on the afternoon and evening of the robbery. On that afternoon and early in the evening they drove to a place several miles south of Rockford and got an uncle of Hall and brought him back to Rockford about seven o'clock. They then drove to Hall's home, and Kane remained in the automobile while Hall went into his home, ate supper and changed his clothing. Then they drove to the home of Kane, remained there about ten minutes, then drove down-town and to the river, and remained there until a boat called City of Rockford pulled out. They then drove back to a pool-room, where they met Friedman about nine o'clock. They then drove out on South Main street and around what they called the 15-mile loop, in the country, and then came back to Rockford a little after twelve o'clock and drove into a garage for the purpose of getting oil. While they were in the garage they turned off their lights,

and while backing out of the garage they failed to turn
them on immediately, and it was at this time that the po-
lice officer ordered them to turn on their lights, with which
order they complied immediately.   They explained that the
damaged condition of the car and the fact that a tire was
in the back seat was the result of an accident occasioned
by the car backing down a hill and turning over while
they were driving around the 15-mile loop shortly before
their arrest.   They denied committing the robbery in ques-
tion, and also denied that they attempted to rob the John-
son brothers and North and all knowledge concerning those
two incidents.   They denied being armed with revolvers at
any time that night.   They were corroborated in certain
parts of their story by the mother and father of Hall and
his uncle, and by the brother of Kane.   Friedman also tes-
tified in their behalf that he had met them a few minutes
before nine o'clock on that evening and corroborated the
story of their whereabouts after that time and until they
were arrested.   It appears from the testimony of Hall's
father and mother that both defendants had on caps that
night but they were unable to describe the caps.   Kane tes-
tified that he had on a gray cap and a blue shirt.

The only errors argued by the defendants are that the
court erred in allowing testimony on behalf of the People
tending to show the commission of a subsequent and inde-
pendent crime, and that the instruction of the court given
on his own motion, bearing on that evidence, was compli-
cated and would require a high degree of intelligence on
the part of the jury to comprehend it.   The general rule
is, as stated by counsel for the defendants, that facts tend-
ing to prove the commission of independent crimes, and
the details thereof, are not admissible, and that a violation
of such rule is reversible error.   There are important ex-
ceptions to this rule, and where the identity of the accused
is disputed or his defense be an alibi, such evidence may
become relevant to defeat the hypothesis of non-identity or

to rebut the evidence tending to prove the alibi. This rule is sometimes tersely stated to the effect that if such evidence is admissible on general grounds it is not rendered inadmissible by the fact that it discloses other offenses than the one with which the defendant is charged; that the test of admissibility is the connection of the facts proven with the offense charged, and that where such evidence is relevant and tends to prove the defendant's guilt, he cannot by multiplying his crimes diminish the volume of competent evidence against him. (*People* v. *Jennings,* 252 Ill. 534; *State* v. *Adams,* 20 Kan. 311; *People* v. *Mandrell,* 306 Ill. 413.) The defendants' alibi covered the whole time up to their arrest by the officers on the morning of June 23, and the People's evidence in question tended to refute that defense. The testimony of the Johnsons and North contradicted the testimony of Friedman, as did also the testimony of the officer who was stationed near State and Church streets, and the officer's testimony and that of the Johnsons and of North were in corroboration of one another. It is clear that under the exception to the rule aforesaid much of the testimony relating to the subsequent offense was admissible. It is perhaps true that some of the details of the latter crime that were given in evidence were improper, the rule being, under the exceptions, that no details should be given of the subsequent offense that are not necessary and relevant to the establishment of the crime charged; but the defendants made no objection whatever upon this ground, and, in fact, made no objection whatever to any part of this evidence, except an objection or two to the effect that the evidence objected to was repetition. There was one other objection which was overruled by the court, the evidence objected to being the testimony of a witness that Bayard Johnson exclaimed when he was shot, "I am shot!" This objection should have been sustained, but the fact that he was shot had already been put in evidence without any objection on the part of the defendants, and the exclamation of Johnson

did not add anything to the damage that had already been done.  It is not the part of the trial court to exclude or stop the introduction of improper and irrelevant testimony where the defendant does not make any sort of an objection to the same and does not move to exclude it after it has been introduced.

The voluntary instruction given by the court was to the effect that the defendants were not on trial for the alleged assault and attempt to rob which occurred on Garfield avenue on that evening, and that the testimony concerning that transaction was admitted and to be considered solely and only, first, on the question of the identification of the defendants; second, on the question whether or not the defendants were armed with revolvers at or about the time the alleged robbery was claimed to have taken place on Seventeenth avenue; and third, upon the question whether or not certain of the testimony of the defendants was true or untrue.  By this instruction the jury were further told that in their consideration of the case they were to strictly limit all the evidence concerning the alleged assault and robbery on Garfield avenue to its bearing, if any, upon the foregoing subjects and questions.  The defendants offered no instruction upon this phase of the case, and the court's instruction was intended to guard the jury as much as possible against any irrelevant testimony detailing the crime committed on Garfield avenue.

The evidence in the case clearly supports the verdict of the jury, and while the testimony of the defendants and their witnesses tended, when considered alone, to clearly establish the alibi, still under the conditions found in the record there is no substantial reason why this court should interfere with the verdict and judgment of the trial court.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*