(No. 27406.—

The People of the State of Illinois, Defendant in Error, *vs.* Joseph Kasallis *et al.*—(Edward Szymanski, Plaintiff in Error.)

*Opinion filed Nov. 16, 1943—Rehearing denied Jan. 13, 1944.*

Frank A. McDonnell, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and CHARLES G. SEIDEL, State's Attorney, of Elgin, (JOHN S. PETERSEN, of Aurora, of counsel,) for the People.

Mr. CHIEF JUSTICE SMITH delivered the opinion of the court:

Plaintiff in error, Edward Szymanski, was charged jointly with Joseph Kasallis with the crime of burglary and larceny. Upon a trial before a jury, in the circuit court of Kane county, separate verdicts were returned finding each of the defendants guilty of larceny. The value of the property stolen was fixed by the jury in each verdict at $174. Judgment was entered on the verdicts. Each of the defendants was sentenced to the penitentiary for an indeterminate term of not less than one or more than ten years. Szymanski sued out this writ of error, alone. The case as to Kasallis is not here involved.

The evidence offered on behalf of the People shows that on the afternoon of July 18, 1942, one Walter Fabrick was in the store of J. C. Penney Company, Inc., in Elgin. Fabrick was merely a customer. He had no connection with the store. He testified that while he was waiting in the men's clothing department he observed Kasallis stuffing a suit of clothes in a shopping bag. When Fabrick accosted him, Kasallis ran out of the store. Fabrick ran after him. After Kasallis had run a short distance outside the store, he threw the shopping bag down, but continued his flight. Fabrick picked up the bag, but continued running after Kasallis. About that time he observed police officer Pingree across the street. He called to the officer and pointed out Kasallis as he ran. The officer commandeered a passing automobile and continued the pursuit of Kasallis. Fabrick then returned to the Penney store with the bag Kasallis had discarded. It contained a new three-piece suit of men's clothes. The suit was identified as one which had been taken from the store. The shopping

bag in which Kasallis placed the suit, and which he threw away as he ran, was an ordinary shopping bag with the name "Walgreen" on it, indicating it had come from Walgreen's store. Officer Pingree continued the chase for some blocks. Kasallis was on the west side of the street, running south. He finally turned and ran across to the east side of the street where he entered a parked automobile, which was headed north, taking his seat under the wheel. About the time he got into the automobile, officer Pingree arrived and covered him with his gun. The motor was not running, but the key was in the ignition switch. Seated beside Kasallis in the front seat of the automobile, was plaintiff in error. Officer Pingree got someone to call the police station for help. Shortly thereafter two squad cars arrived. Kasallis and plaintiff in error were taken to the police station by the officers. The automobile in which they were found was also driven to the police station. When officer Pingree reached the automobile which Kasallis had entered, being a four-door Buick sedan, he opened the rear left door and entered the back seat, keeping his gun on the two occupants of the front seat. On the floor in front of the rear seat, he noticed a bag with the name "Walgreen" on it. The bag contained some clothing. When the car reached the police station it was examined by a number of police officers. The "Walgreen" bag, observed by officer Pingree in the car, contained two new suits of men's clothes. The officers then opened the back trunk or compartment of the car. It was filled with men's new suits. This clothing was taken into the police station and examined. Altogether there were fifteen new suits of men's clothing found in the car, nine of which were identified as having been stolen from the Penney store, and six of which were identified as having been stolen from the store of Sears, Roebuck & Company.

The defendants were tried jointly. The indictment on which they were tried charged them with the larceny of eleven suits of men's clothing, the property of J. C. Penney Company, Inc., a corporation. Kasallis took the stand and also called other witnesses in his behalf. Szymanski did not testify. He did not call any witnesses or offer any evidence. The automobile in which they were found at the time they were placed under arrest was not registered in the name of either of them. The record is rather indefinite as to who owned the car. It was still in the possession of the police at the time of the trial.

Kasallis testified that about eleven o'clock on the morning of the day in question, he met Szymanski by appointment at a Y. M. C. A. in Chicago; that he there took a bath and a swim, and Szymanski took a violet-ray treatment; that they then drove to Elgin in the car, in which they were afterwards arrested, with an acquaintance of his, whose last name he did not know; that when they reached Elgin the car was parked at the place where it was afterwards found by officer Pingree; that the purpose of the trip to Elgin was assist Szymanski in renting a summer home. After the car was parked, as above indicated, Kasallis testified that the driver left him and Szymanski at a nearby bowling alley; that the two of them then visited a lunchstand and later went back to the car where they sat in the front seat listening to the radio until officer Pingree arrived. He categorically denied all the testimony in the case tending to connect him with either the car or the stolen property, as well as all statements made by him to the officers after his arrest. In rebuttal it was shown by the testimony of the secretary of the Y. M. C. A., and the records of that association, that Kasallis was not there on the day in question, as testified to by him. Upon the record made by him the jury was fully justified in disbelieving him *in toto*.

The only evidence offered by the People tending to connect Szymanski with the theft was the fact that he was found in the automobile in which all of the stolen property was found, except that which Kasallis had in his possession when he ran out of the store. Szymanski and Kasallis were in possession of the automobile, as well as of the stolen property. So far as Szymanski is concerned, no explanation was offered or attempted, explaining his possession of the car or the stolen property. The explanation given by Kasallis was wholly discredited and disproved.

The undisputed proof was that nine of the suits found in the car had been recently stolen from the store of the J. C. Penney Company, and the remaining six from the store of Sears, Roebuck & Company, in Elgin. There being no attempt on the part of Szymanski to explain his possession of the automobile or the stolen goods, the jury was warranted in finding him guilty of the wrongful taking, under the rule announced in many decisions of this court. *People* v. *Kulig,* 373 Ill. 102; *People* v. *Strutynski,* 367 Ill. 551; *People* v. *Norris,* 362 Ill. 492; *People* v. *Barnes,* 311 Ill. 559; *Miller* v. *People,* 229 Ill. 376; *Watts* v. *People,* 204 Ill. 233; *Williams* v. *People,* 196 Ill. 173; *Smith* v. *People,* 103 Ill. 82.

Plaintiff in error, Szymanski, urges four propositions upon which he seeks a reversal of the judgment of the court below. His first proposition is that there was no proof that J. C. Penney Company, Inc., was a corporation. From this premise he argues that there was no proof of ownership of the stolen property and the judgment of conviction should be reversed on that account. There was some evidence tending to show corporate user. But entirely aside from the evidence in the case, it was stipulated in the record that exhibits 4 to 12, inclusive, which were nine of the suits of clothes found in the automobile, were

"the property of J. C. Penney Company, Inc., a corporation." While the stipulation in the record does not show that it was signed by the attorney for plaintiff in error, it was made by him and certified by the trial court in the report of. proceedings. It is not clear from the record whether this stipulation was made during the trial or after the judgment was entered. It is certified by the trial judge as a part of the report of the proceedings had in the trial of the cause. Whether it was made during or after the trial, and whether it was, or was not, submitted to the jury, it is a part of the record of the proceedings had in the trial court. For counsel to now challenge the facts which he has heretofore stipulated, certainly places him in the unenviable position of trifling with the facts which he has stipulated in the record against his present contentions. In view of this stipulation, plaintiff in error is not in a position to urge that the proof failed to show that J. C. Penney Company, Inc., was a corporation. There is no merit in this contention.

The next point urged by plaintiff in error is, that it was error to admit testimony concerning the finding of the suits in the automobile which it was shown had been stolen from Sears, Roebuck & Company. All of the suits involved were stolen property. They were all found in the automobile in the possession of the defendants. While it is true that proof of an independent crime is not ordinarily admissible and may constitute reversible error, it is equally well settled that the test of the admissibility of evidence is whether it fairly tends to prove the particular offense charged. (*People* v. *Bloom,* 370 Ill. 144; *People* v. *Deal,* 357 Ill. 634.) It has been said by this court that if evidence is otherwise admissible, it is no objection to its admission that it discloses other offenses, even though they are the subject of indictment. Whatever testimony tends directly to show the defendant guilty of the crime

charged is competent, although it also tends to show him guilty of another and distinct offense. *People* v. *Jennings,* 252 Ill. 534; *Farris* v. *People,* 129 Ill. 521.

In *People* v. *Hall,* 308 Ill. 198, this court said that if evidence is admissible on general grounds it is not rendered inadmissible by the fact that it discloses other offenses than the one with which the defendant is charged; that the test of admissibility is the connection of the facts proved with the offense charged; and that where such evidence is relative and tends to prove a defendant's guilt, he cannot, by multiplying his crimes, diminish the volume of competent evidence against him. To the same effect is *People* v. *Spaulding,* 309 Ill. 292; *People* v. *Watkins,* 309 Ill. 318; *People* v. *Cione,* 293 Ill. 321; *People* v. *Laures,* 289 Ill. 490.

Under the rule announced in the above cases, clearly, the evidence as to the stolen property found in the possession of plaintiff in error was admissible as tending to show such possession. Seven of the suits stolen from the Penney store and the six suits stolen from the Sears, Roebuck store, were commingled and concealed in the rear compartment of the automobile. It would be practically impossible to prove the finding of the suits stolen from the Penney store in the automobile without also showing that the suits stolen from the Sears, Roebuck store were concealed in the same compartment of the automobile. His contention in this respect cannot be sustained.

The next objection presented by plaintiff in error, is the refusal of the court to give two instructions tendered by him. The court gave, on behalf of the defendant, twenty-seven instructions. The subject of the refused instructions was fully covered by the instructions given, not only on behalf of the defendants, but by instructions given on behalf of the People. There was no error in refusing the instructions.

The last point urged by plaintiff in error is the action of the trial court in permitting the State to call witnesses in rebuttal to impeach the testimony of Kasallis. The People had a right to offer testimony in rebuttal to impeach the testimony of Kasallis as a witness. The rebuttal testimony concerned his alleged visit to the Y. M. C. A. in Chicago on the day in question, and statements made after his arrest, at variance with his testimony on the witness stand. It was also shown in rebuttal by some of these witnesses that Kasallis gave a fictitious address in his statements to the officers, and did not reveal the same address which he claimed in his testimony. No reason is pointed out, or even suggested, why this evidence was not proper in rebuttal, or why such testimony was not properly admitted.

There are no reversible errors in the record. The judgment of the circuit court of Kane county is affirmed.

*Judgment affirmed.*