### LUMPKIN v. STATE. (8 Div. 51.)

(Court of Appeals of Alabama. June 12, 1923.)

**1. Witnesses ⟨⟩2(2)—Defendant's right to secure attendance of witnesses is constitutional.**

The right of extraordinary compulsory process by attachment, as well as the ordinary process by subpœna, for securing attendance of his witnesses is guaranteed to defendant by the Const. 1901, § 6.

**2. Criminal law ⟨⟩1151—Witnesses ⟨⟩2(3)—Constitutional guaranty as to compulsory process for witnesses does not take from trial court discretion as to continuances.**

Right of a defendant to secure compulsory attendance of witness guaranteed under Const. 1901, § 6, does not take from the trial court discretion as to granting or refusing continuances, which discretion is not revisable in the absence of a showing of abuse.

**3. Criminal law ⟨⟩594(3)—Refusal of continuance not error.**

In a prosecution for murder, where to secure attendance of defendant's witnesses the trial court ordered issuance of writs of attachment for absent witnesses, on whom subpœnas had been executed, and ordered the sheriff to execute the writs, if possible, and defendant was given benefit of the ordinary process by subpœna and the extraordinary compulsory process of attachment, guaranteed by Const. 1901, § 6, there was no error in the court's refusal to pass or continue the case.

**4. Criminal law ⟨⟩600(1), 1151—Right of trial court to require defendant to go to trial, on state's admission of absent witnesses' testimony, is matter of discretion.**

The right of a trial court to require defendant to go to trial, on the admission by the state of what defendant's absent witnesses would testify, is a matter of discretion, exercise of which is not revisable.

**5. Witnesses ⟨⟩245—Refusal to permit repetition of question and answer not error.**

Where witness in a murder prosecution, at the time a question was asked him, had already answered it and answered it again subsequent to the time objection thereto was in-

terposed, no error can be predicated on the refusal to permit a repetition of the question and answer.

**6. Criminal law ⟨⟩1170(3)—Error in refusing to admit relevant evidence cured by subsequently admitting it.**

Error in refusing to admit relevant and competent evidence is cured by subsequently admitting it.

**7. Witnesses ⟨⟩268(1)—Cross-examination of defendant as to necessity for going through deceased's room, to get hat and shoes, held permissible.**

In a prosecution for murder where a state's evidence showed that after supper defendant left deceased's house about 10 o'clock, but came back the next morning when a fight ensued and deceased was killed, it was permissible on cross-examination of defendant to show that, in order to go from his room in the home of deceased to a certain closet where his hat and shoes were, he had to go through the room occupied by deceased and wife.

**8. Witnesses ⟨⟩277(2)—State held to have right to cross-examine defendant as to matter first brought in by defendant.**

In a prosecution for murder where defendant stated that a short time before the difficulty he and his brother and deceased were some distance from house of deceased and that defendant unlocked the door of an old house and sat down in it, the state had the right to cross-examine him as to what was in the house.

**9. Witnesses ⟨⟩277(2) — Defendant cannot complain of cross-examination as to matters placed in evidence on direct.**

In a prosecution for murder, where defendant stated in direct examination that before the difficulty he went to deceased's house to get a drink of water, it was proper to permit cross-examination as to the time it would take to walk up there and back.

**10. Witnesses ⟨⟩267—Limits of cross-examination within trial court's discretion.**

The legitimate limits of cross-examination are largely within the discretion of the court.

**11. Criminal law ⟨⟩650—Solicitor's taking part of deceased, and having defendant illustrate how fight occurred, held not error.**

In a prosecution for murder, it was not error to require defendant on cross-examination to illustrate, with the state's attorney taking the part of deceased, the actions of the parties to the encounter.

**12. Criminal law ⟨⟩674—Excluding defendant's statement that others interfered with fight not error.**

In a murder prosecution, where defendant on cross-examination stated that others walked in between deceased and defendant and "interfered" with the fight, and by "interfering" defendant meant that they stopped the fight, in excluding "interfere" on the state's objection, but permitting the explanation to remain, was no error.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**13. Criminal law ⊕448(3)—Expressions of opinion held inadmissible.**

In a prosecution for murder, expressions of defendant in testifying that "I thought the fight was over," "I was not expecting it," were expressions of opinion and inadmissible.

**14. Criminal law ⊕1169(5)—Error in admitting evidence of defendant's other offenses cured by exclusion and instruction.**

· In a prosecution for murder, error in admission of evidence as to defendant's conviction for certain other offenses and confinement in the penitentiary, was cured by the court's later action excluding it from the jury and instructing not to consider such evidence.

**15. Criminal law ⊕1170(3)—Error in sustaining objection as to evidence cured by subsequent admission thereof.**

In a prosecution for murder, error in refusal to permit defendant, examined as a witness, to testify that he had not been convicted of crimes in M. county or any other county in the state, was cured by subsequent admission of such evidence.

**16. Criminal law ⊕867—Refusal of defendant's motion to withdraw case from jury, not error.**

Where the court excluded evidence of defendant's conviction of other offenses and confinement in the penitentiary, and instructed the jury that the matters inquired about were not evidence and were not to be considered, it will not be put in error for refusing defendant's motion to withdraw the case from the jury.

**17. Witnesses ⊕367(1)—Permitting cross-examination of witness as to being on bond of defendant's brother, growing out of same transaction, held without error.**

In a prosecution for murder, it was not error to permit cross-examination of defendant's witness as to whether he was on defendant's brother's bond, growing out of the same transaction, to show witness' interest or bias.

**18. Criminal law ⊕448(3)—Question properly excluded, as calling for belief or opinion.**

In a prosecution for murder, it was proper to sustain objection to defendant's question to witness, whether if he told another that he thought that defendant ought to have been turned loose he honestly believed it, such question calling for expression of belief or opinion.

**19. Witnesses ⊕245—Asking witness if, after reflection, he still said defendant's character was good, held useless.**

In a murder prosecution, where witness stated that the character of deceased for peace and quiet was good, to ask if, after reflection, he still said it was good, was useless.

**20. Witnesses ⊕268(6)—Sustaining objection as to witness as to the number of fights deceased had had held reversible error.**

In a prosecution for murder, where state's witness testified as to the good character of deceased for peace and quiet, sustaining objection to defendant's question, on cross-examination, if he had not heard of a dozen fights that deceased had· had, was reversible error.

**21. Criminal law ⊕721(6)—Argument of state's counsel not objectionable.**

In a prosecution for murder where evidence showed that difficulty arose between defendant and deceased the night before the killing, when defendant left deceased's house, argument of state's counsel that, if he had been defending defendant, and it appeared that defendant had left at 10 o'clock at night, under circumstances as shown by evidence, "he would· have called on him for an explanation of his conduct," did not transcend limits of legitimate argument.

**22. Witnesses ⊕406—Evidence as to whether mother heard her little daughter give defendant warning held relevant.**

In a prosecution for murder, where defendant stated he left deceased's home, when deceased's little ·daughter told him that her father had threatened to kill him, evidence of deceased's wife in rebuttal as to whether she heard or saw the daughter go to defendant's room and give him the warning as claimed by defendant, and as to the room in the house occupied by the daughter, was relevant as contradictory of defendant's statement.

**23. Witnesses ⊕404—Evidence held to be contradictory to defendant and admissible.**

In a prosecution for murder, evidence of deceased's wife in rebuttal relating to details of the transaction leading up to the homicide as given in evidence by defendant, which details were specifically denied by witness, was admissible as in contradiction.

**24. Criminal law ⊕867—Overruling request to withdraw case from jury not error.**

In a prosecution for murder, where all improper evidence and argument of counsel had been excluded from the jury, it was not error to overrule request, made after argument, to withdraw the case from the jury and continue it.

**25. Criminal law ⊕829(1)—Refusing charge asserting legal proposition set out in charge given not error.**

In a murder prosecution, there was no error in refusal of a charge asserting a legal proposition set out in a given charge.

**26. Criminal law ⊕789(4), 811(2)—Refusal of charge held proper as singling out evidence and argumentative.**

In a murder prosecution, a charge that if state's witnesses have manifested bias or such excitement or confusion on the occasion under investigation as to render their version unreliable and when considered in connection with all the other evidence in the case creates a reasonable doubt of defendant's guilt, he should not be convicted, was properly refused as singling out evidence and being argumentative.

**27. Criminal law ⊕789(4), 763, 764(24)—Refusal of charge as argumentative and invasive of province of jury not error.**

In a prosecution for murder, charge that a reasonable doubt of defendant's guilt may arise from infirmity of evidence, weakness of tes-

⊕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

19 ALA.APP.—18

timony, from lack of opportunity of witnesses to see and hear what was done and said, when such exists, and should be considered in connection with all other evidence, and, if from such consideration there is a reasonable doubt, defendant should not be convicted, was argumentative and invasive of the jury's province, and refusal thereof was not error.

**28. Criminal law ☞789(4), 811(2)—Charge held to single out evidence, and refusal thereof not error.**

In a prosecution for murder, there was no error in refusal of a charge that, if evidence is such that the jury had a reasonable doubt of reliability of testimony of witnesses testifying to material facts, and from such want of reliability they have a reasonable doubt of guilt, then to acquit, such charge being argumentative and singling out the evidence.

**29. Criminal law ☞811(2)—Charge singling out any fact of evidence held improper.**

A charge in a murder prosecution which told the jury to look to this fact, or that they might consider that fact in reaching a conclusion as to defendant's guilt, was properly refused.

**30. Homicide ☞300(12)—Charge properly refused, as omitting elements of self-defense.**

In a murder prosecution, there was no error in refusing a charge that though defendant may have been in the wrong in bringing on the difficulty yet his right of self-defense would be revived and his actions would be justifiable on the ground of self-defense if he had withdrawn from the affray or difficulty in good faith as far as he reasonably could and announced his purpose to retire from the conflict, such charge omitting elements of self-defense.

**31. Criminal law ☞763, 764(24)—Charge as to reasonable doubt held invasive of province of jury.**

In a prosecution for murder, a charge that any evidence, fact, or circumstance may tend to show excitement, distraction, confusion, or other condition which would affect their capacity to see, hear, understand, and properly comprehend what was done and said during and connected with the difficulty, should be considered in connection with all other evidence in determining guilt or innocence, and, if from such consideration you have reasonable doubt of guilt, then not to convict, was invasive of province of the jury and properly refused.

**32. Criminal law ☞763, 764(23)—Charge on provoking of difficulty held invasive of jury province.**

In a prosecution for murder, a charge that, if from consideration of all the evidence there is a reasonable doubt as to whether defendant provoked the difficulty, then the jury are to weigh and determine all other questions on the hypothesis that he did not provoke the difficulty, was invasive of the jury's province and properly refused.

**33. Criminal law ☞763, 764(23)—Charge as to encouraging difficulty held invasive of jury's province.**

In a murder prosecution, a charge that, if from consideration of all evidence the jury had

a reasonable doubt of whether defendant encouraged the difficulty, then they were to weigh and determine all other questions on the hypothesis that he did not encourage it, was invasive of the jury's province and properly refused.

**34. Criminal law ☞763, 764(23)—Charge on reasonable doubt as to whether defendant fought willingly held invasive of jury's province.**

In a murder prosecution, a charge that, if from consideration of all evidence the jury had reasonable doubt as to whether defendant fought willingly, then they were to determine all other questions on the hypothesis that he did not fight willingly, was invasive of the jury's province and properly refused.

**35. Criminal law ☞763, 764(23)—Charge as to defendant's imminent peril of suffering bodily harm held invasive of jury's province.**

In a prosecution for murder, a charge that, if defendant showed facts connected with the tragedy sufficient to create a reasonable doubt as to whether he was in danger of suffering bodily harm, then to give him benefit of such doubt and treat the case as if he was in fact in such danger, and if he could not retreat therefrom without increasing his peril then to give him the benefit of doubt and treat the case as if he could not retreat without increasing his danger or peril, was invasive of the jury's province and properly refused.

Appeal from Circuit Court, Marshall County; W. W. Haralson, Judge.

Clarence Lumpkin was convicted of manslaughter in the first degree, and appeals. Reversed and remanded.

Assignments 23 and 24 are predicated upon the question asked defendant's witness on cross-examination, "This is a common make of shell, one that could be gotten at most any store, isn't it?" and his answer, "I suppose so."

The following charges were refused to defendant:

"2. The court charges the jury that, if any of the witnesses for the state have manifested bias, prejudice, or interest in the case, or such excitement or confusion on the occasion under investigation as to render their version of the difficulty unreliable and unworthy of credence, and such, when considered in connection with all the other evidence and circumstances in the case, creates in the minds of the jury a reasonable doubt of the defendant's guilt, he should not be convicted.

"3. The court charges the jury that a reasonable doubt of the defendant's guilt may arise from the infirmity of the evidence, the weakness of the testimony, from the lack of opportunity of the witnesses to see and hear what was done and said, when such exists, and should be considered in connection with all the other evidence, and from such consideration there is a reasonable doubt of defendant's guilt, he should not be convicted.

"4. The court charges the jury that, if the evidence is such in this case that the jury have

a reasonable doubt of the reliability of the testimony of the witnesses who testify to material facts, and from such want of reliability, when considered in connection with all the other evidence in the case, they have a reasonable doubt of the guilt of the defendant, you should find the defendant not guilty.

"5. The court charges the jury that, if any witness in the case has shown by his own testimony and deportment before you and by his or her recital of the facts that their powers of observation and opportunities for seeing what was done were in any way limited or interfered with, then you may consider this fact in connection with all other evidence in the case in determining the issues and arriving at your verdict.

"6. The court charges the jury that even though the defendant may have been in the wrong or at fault in bringing on the difficulty yet his right of self-defense would be revived and his actions would be justifiable on the ground of self-defense if he had withdrawn from the affray or difficulty in good faith as far as he reasonably could, and had clearly and fairly announced his purpose to retire from the conflict.

"7. The court charges the jury that any evidence, fact, or circumstance in the case may tend to show excitement, distraction, confusion, or any other condition which would affect their capacity to see, hear, understand, and properly comprehend what was done and said during and connected with the difficulty should be considered by the jury in connection with all the other evidence in determining the guilt or innocence of the defendant, and if from such consideration you have a reasonable doubt of his guilt you should not convict him.

"8. If from a consideration of all of the evidence in the case the jury have a reasonable doubt of whether the defendant provoked the difficulty, then they are to weigh and determine all other questions on the hypothesis that he did not provoke the difficulty.

"9. If from a consideration of all the evidence in the case the jury have a reasonable doubt of whether the defendant encouraged the difficulty, then they are to weigh and determine all other questions on the hypothesis that he did not encourage the difficulty.

"10. If from a consideration of all of the evidence in the case the jury have a reasonable doubt of whether the defendant fought willingly, then they are to weigh and determine all other questions on the hypothesis that he did not fight willingly.

"11. If from a consideration of all the evidence in the case the jury have a reasonable doubt as to whether the defendant provoked the difficulty and fought willingly, then they are to weigh and determine all other questions on the hypothesis that he did not provoke the difficulty, that he did not encourage the difficulty, and that he did not fight willingly.

"12. The measure of proof required of a defendant, when charged with the unlawful killing of a human being, where he seeks to set up that at the time of the shooting or striking of the deceased he was in present, pressing, imminent peril of life, or in present, pressing, imminent danger of suffering some great bodily harm, is: That if he shows facts and circumstances connected with the tragedy sufficient to create in the mind of the jury a reasonable doubt as to whether he was so in danger, either real or apparent, the jury should give him the benefit of such doubt and treat the case as if he was in fact in such danger, and if the defendant has shown such facts and circumstances connected with the tragedy as to create in the mind of the jury a reasonable doubt as to whether or not the defendant could retreat from such danger without increasing his peril then the jury should give him the benefit of the doubt and treat the case as if he could not retreat without increasing his danger or peril."

Defendant objected to this argument by the solicitor:

"If I (state's counsel) had been defending the defendant, and it appeared that he had left at 10 o'clock at night, under the circumstances as shown by this evidence, I would have called upon him for an explanation of his conduct."

John A. Lusk & Son, of Guntersville, for appellant.

Defendant is entitled to compulsory process to obtain his witnesses. Thomas v. State, 15 Ala. App. 408, 73 South. 558; Walker v. State, 129 Miss. 449, 92 South. 580; Const. 1901, § 6. Evidence of the character of deceased for violence should have been admitted. 1 Jones on Ev. 792; De Arman v. State, 71 Ala. 351; Bush v. State, 168 Ala. 81, 53 South. 266; Walker v. State, 117 Ala. 85, 23 South. 670. It was error to refuse to allow defendant to show threats made by the deceased. Jones v. State, 181 Ala. 63, 61 South. 434; Beasley v. State, 181 Ala. 28, 61 South. 259; Olive v. State, 2 Ala. App. 77, 57 South. 66. It was not proper to permit the state to prejudice defendant by asking him about other offenses with which he had been charged. Wise v. Schneider, 205 Ala. 537, 88 South. 662; Brotherhood v. Trimm, 207 Ala. 587, 93 South. 533; Fleming v. State, 150 Ala. 19, 43 South. 219; Ala. Lbr. Co. v. Cross, 152 Ala. 562, 44 South. 563, 126 Am. St. Rep. 55; Pratt Co. v. Morton, 14 Ala. App. 194, 68 South. 1015; Edmonds v. State, 16 Ala. App. 157, 75 South. 873. It was not permissible to impeach or show bias of a witness by showing on cross-examination that he was on defendant's brother's bond. McAlpine v. State, 117 Ala. 94, 23 South. 130; Hooper v. Herring, 14 Ala. App. 455, 70 South. 308; A. G. S. v. Foley, 195 Ala. 391, 70 South. 726; Bullington v. State, 13 Ala. App. 61, 69 South. 319. Full right of cross-examination should be allowed the defendant by the court. Wilson v. State, 195 Ala. 675, 71 South. 115.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

Compulsory process, referred to in section 6 of the Constitution, does not include attachment. Sanderson v. State, 168 Ala. 109, 53 South. 109. Where testimony is subsequently admitted, the overruling of an ob-

jection thereto is not error. Franklin v. State, 18 Ala. App. 374, 92 So. 526. It was permissible for the state to show that the witness was on the bond of defendant's brother. 1 Mayf. Dig. 336. The character of the deceased cannot be shown by isolated facts not connected with the case. Dupree v. State, 33 Ala. 380, 73 Am. Dec. 422.

FOSTER, J. The defendant, appellant, was convicted of manslaughter in the first degree.

The defendant had made a contract by the terms of which he was to live at the home of the deceased (Vann) during the year 1922, as a member of his family, working the crops with him, and to receive one-sixth of the products grown upon the farm. On Sunday previous to the killing on Monday, April 10th, defendant used the horse of the deceased. Defendant came home after dark, and deceased complained to him about keeping his horse out so late.

The state's evidence tended to show that after supper defendant and deceased had a few words; that defendant left the house about 10 o'clock, went over to his father's house, where he spent the night, went back, with his brother, to the home of deceased the next morning; that the father of defendant and one Brasseal came about a half hour later; that upon reaching deceased's home defendant called him, and he went into the yard; that after talking for some time defendant told deceased he had come to have a settlement with him; that a fight ensued in which defendant struck deceased over the head with a gun, killing him. During the difficulty the defendant was cut with a knife.

The defendant claimed that on the Sunday night before the killing on Monday, a little child of deceased had gone to defendant's room and told him that her father had threatened to kill him; that he left the house, spent the night at his father's house, and next morning went to deceased's house, and spoke to him about a settlement with him; that he did not provoke the difficulty; that the deceased attacked him with a knife, cut him; and that he struck the fatal blow in self-defense with a shot gun brought upon the scene by one of the children of deceased.

[1] 1. Counsel for appellant insist that the trial court erred in not postponing, passing, or continuing the case in order that defendant might have compulsory process for certain absent witnesses, and that compulsory process guaranteed by section 6 of the Constitution included both the ordinary process by subpœna and the extraordinary process of attachment. The right of a defendant in a criminal prosecution "to have compulsory process for obtaining witnesses in his favor" was thus explained and defined in Childress

v. State, 86 Ala. 77, 5 South. 775, and approved in Sanderson v. State, 168 Ala. 112, 53 South. 109:

"The object and meaning of the constitutional guaranty is that the court will exercise its powers, by the processes usual and known to the law, to compel the attendance of witnesses on behalf of the accused. It does not operate to take from the court the discretion as to granting or refusing continuances, or the authority to adopt proper means for ascertaining whether an application for a continuance is made with the view to obtaining a fair trial, or for the mere purpose of delay. The defendant had previously obtained the issuance of subpœnas for his witnesses, which is the ordinary preliminary process to secure their attendance. Extraordinary compulsory process, such as attachment, is not resorted to, until the witness has placed himself in contempt and the propriety and necessity of the process is shown."

The right of the extraordinary compulsory process by attachment, as well as the ordinary process by subpœna, for securing the attendance of his witnesses, is guaranteed to a defendant by the Constitution of the state. Bush v. State, 168 Ala. 81, 53 South. 266; Walker v. State, 117 Ala. 85, 23 South. 670; Thomas v. State, 15 Ala. App. 408, 73 South. 558; Childress v. State, supra; Sanderson v. State, supra.

"Before it can be said that the accused has been denied this constitutional right he must apply to the court for the issuance of an attachment, and show * * * that the witness has been served with a subpœna a sufficient length of time before the trial to afford an opportunity to the witness to obey its mandate, that the witness is within the jurisdiction of the court, and that his attendance can be obtained within a reasonable time by the compulsory process, that such witness is absent without the procurement or consent of the accused, and that the testimony of the witness is material." Thomas v. State, 15 Ala. App. 408, 73 South. 558.

[2, 3] In the instant case the trial court ordered the issuance of writs of attachment for the absent witnesses upon whom subpœnas had been executed, and ordered the sheriff to execute the writs if possible. The defendant was given the benefit of the ordinary process by subpœna and the extraordinary compulsory process of attachment guaranteed to him by section 6 of the Constitution. This constitutional guaranty does not take from the trial court the discretion as to granting or refusing continuances, and this discretion is not revisable in the absence of a showing of abuse. Childress v. State, supra.

The court did not err in its refusal to pass or continue the case.

[4] The showings for the absent witnesses were admitted by the solicitor, and the defendant had the benefit of the testimony on

the trial. The right of a trial court to require the defendant to go to trial, on the admission by the state of what absent witnesses for defendant would testify, is a matter of discretion, the exercise of which is not revisable on appeal. Waters v. State, 117 Ala. 108, 22 South. 490.

[5] The defendant's counsel on cross-examination of the state's witness Brasseal propounded the following question, "Did you not say a moment ago that they were scuffling over it?" meaning the gun. Objection by state's counsel to this question was sustained by the court. The witness had already answered this question and answered it again subsequent to the time the objection was interposed. No error can be predicated upon the action of the court in refusing to permit a repetition of the question and answer. Franklin v. State, 18 Ala. App. 374, 92 South. 526.

[6] It is insisted that the court erred in refusing to permit the defendant to testify that the child of the deceased told him (defendant) on the night before the killing that her father (deceased) had made threats to kill the defendant. The testimony here sought by defendant was later admitted by the court. Error committed in refusing to admit evidence which is relevant and competent is cured by subsequently admitting it. Franklin v. State, supra; Brown v. State, 137 Ala. 99, 34 South. 822.

[7] There is no merit in assignments 6, 7, 8, and 9. It was permissible for the state on cross-examination of the defendant to show that, in order to go from his room in the home of the deceased to a certain closet where his hat and shoes were, he had to go through the room occupied by Mr. and Mrs. Vann.

[8] There is no merit in the tenth and eleventh assignments. The defendant had testified that a short time before the difficulty occurred he and his brother and the deceased were some distance from the house of deceased, and that the defendant unlocked the door of an old house and sat down in it. The solicitor asked the defendant what was in the old house. The defendant had opened up the inquiry about the house and the state had the right to cross-examine him as to what was in the house. The evidence could neither benefit nor injure the defendant.

[9, 10] The defendant had testified on his direct examination that before the difficulty he went to the house of deceased to get a drink of water. It was proper on cross-examination to permit the question asked by counsel for the state, "How many minutes in your judgment would it take to walk up there and back?" The answer of defendant was, "I don't really know how long it would take." We do not regard this as an important inquiry. But the defendant had already put

in evidence a fact about which the question on cross-examination elicited further information. He cannot complain that he was cross-examined about matters which he placed in evidence on his direct examination. The legitimate limits of cross-examination are largely within the discretion of the court. Sanford v. State, 2 Ala. App. 81, 57 South. 134; Smiley v. Hooper, 147 Ala. 646, 41 South. 660; Treadwell v. State, 168 Ala. 96, 53 South. 290.

[11] The defendant objected to the solicitor taking the part of deceased and having the defendant illustrate before the jury how the fight occurred.

In Gunter v. State, 111 Ala. 23, 20 South. 632, 56 Am. St. Rep. 17, the court said that a witness may locate a wound by pointing out a corresponding spot on the person of the solicitor.

In an action for the death of a person struck by a car, the motorman was permitted to illustrate with his hands the time it would take him to go through the various motions necessary to stop or check up the car, as it would give the jury a better idea of what was done than could be explained by mere words. Birmingham, R. L. & P. Co. v. Saxon, 179 Ala. 156, 59 South. 584.

In Linnehan v. State, 120 Ala. 298, 25 South. 6, the court said there was nothing objectionable in the solicitor's standing up before the witness and motioning his hands in illustrating, when he asked the witness the question, "If Oakley did not tell him to go on off just before the shooting, and motion this way?"

It was not error for the court to require the defendant on cross-examination to illustrate the motion and actions of the parties to the encounter, with the state's attorney taking the part of deceased.

[12] The defendant testified on cross-examination that his father and Brasseal walked in between Vann and defendant and "interfered" with the fight. The state's counsel objected to the use of the word "interfered"; defendant said by "interfered" he meant they stopped the fight. The court excluded "interfered," but did not exclude "they stopped the fight." No error can be predicated on this action of the court.

[13] The defendant in testifying used the expressions, "I thought the fight was over," "I was not expecting it" (meaning Vann's getting his knife out). These were expressions of opinion merely, and clearly inadmissible.

[14] Assignments 19, 20, and 21 involve objections to questions propounded to the defendant by the solicitor as to defendant's conviction of certain offenses and confinement in the federal penitentiary in Atlanta. The court later excluded from the jury all of these questions and answers and instructed the jury not to consider this evidence

in any event. Any error in admitting the evidence was cured by the action of the court, later in excluding it and instructing the jury not to consider it.

[15] The court refused to permit defendant, examined as a witness in his own behalf, to testify that he had not been convicted in Marshall county or any other county in the state, but immediately following this ruling the defendant testified that he had never been convicted in any court in the county or state. The defendant had the benefit of the evidence on the trial, and any error in sustaining objection in the first instance was cured by the subsequent admission of the evidence.

[16] Counsel for the state had propounded to the defendant a number of questions as to whether he had been in the penitentiary at Atlanta or been convicted of certain offenses. After this line of questioning persisted in by the state and objected to by the defendant, defendant's counsel moved the court to withdraw the case from the jury. The court overruled the motion and instructed the jury that those matters inquired about were not evidence at all, and that they were excluded from the jury, and they were not to be considered by the jury in any event. The court having excluded from the jury the objectionable evidence, and having instructed the jury not to consider it, will not be put in error for refusing defendant's motion to withdraw the case from the jury.

There is no merit in assignments 23 and 24.

[17] The state, on cross-examination of defendant's witness, Forney Bradford, asked, "You are on Charles' bond growing out of the same transaction?" Timely objection was interposed by defendant, and motion to exclude the answer of witness that he was on the bond. Charles was the brother of the defendant, went with him to the home of deceased on the morning of the fatal difficulty, and was there throughout the fight.

In the case of Phillips v. State, 11 Ala. App. at page 174, 65 South. at page 675, this court said:

"There was no error in permitting the state's counsel to ask the defendant's witness, Mrs. Myers, on cross-examination, if her husband, Oscar Myers, was not also indicted for the same offense. * * * The question was competent to identify the witness as his wife and show interest or bias, and it is always permissible to ask questions on cross-examination having a tendency to elicit testimony showing the interest or bias of the witness."

In the McAlpine Case, 117 Ala. 93, 23 South. 130, cited by counsel for appellant, the witness was asked if he was not on the bond of a person indicted with the mother of one of the defendants for a similar offense, but not growing out of the transaction for which defendants were being tried.

In the instant case the question related to the bond of the brother of the defendant, charged with an offense growing out of the same transaction. For the purpose of showing his interest or bias in the case the witness could be asked on the trial of Charles Lumpkin if he was on Charles' bond. Likewise it was permissible in order to show interest or bias to ask the witness on cross-examination if he was not on defendant's brother's bond, his brother being charged with an offense growing out of the same transaction.

[18, 19] There is no merit in assignment 27 based on the court sustaining state's objection to defendant's question to Forney Bradford on examination in rebuttal as follows: "If you told Mr. Street that you thought that defendant ought to be turned loose, you honestly believed it, didn't you?" The question called for the expression of the belief or opinion of the witness. There is no merit in assignment of error 28. The witness had testified that the character of deceased for peace and quiet was good, and it was useless to ask if after reflection he still said it was good.

[20] One Currier was introduced by the state as a witness and testified to the good character of the deceased for peace and quiet. The court sustained the state's objection to the defendant's question on cross-examination of this witness if he had not heard of a dozen fights that man (Vann, the deceased) had.

In cross-examination great liberty is allowed. This right is afforded both the state, and the defendant and "is generally the most effective instrumentality for eliciting the witness' means of obtaining correct and certain knowledge of the facts to which he bears testimony." It was permissible on cross-examination, for the purpose of testing the witness' knowledge of the facts, the extent of his information, and the data from which he draws his conclusion, to ask if he had not heard of other difficulties in which the deceased had been engaged.

In Miller's Case, 77 Ala. 41, our Supreme Court held that there was error in refusing to permit the defendants to ask the witness Scott, on cross-examination, if he had not heard that the deceased, shortly before he was killed, had several rows and shooting scrapes in Winston county.

The relevancy and competency of the evidence was expressly ruled in De Arman v. State, 71 Ala. 351; Wilson v. State, 195 Ala. 679, 71 South. 115; Martin v. State, 104 Ala. 71, 16 South. 82.

This is the only reversible error in the record.

[21] That portion of the argument of state's counsel objected to by defendant does not transcend the limits of legitimate argu-

ment. Mitchell v. State, 18 Ala. App. 471, 93 South. 46.

[22] Assignments of error 30, 31, 32, 33, 34, and 35 are based on objections to questions asked state's witness, Mrs. Vann, in rebuttal, as to whether she heard or saw her little daughter go to defendant's room and give him the warning as claimed by defendant, and as to the room in the house occupied by the little girl. Mrs Vann was in her room at the time it was claimed by the defendant that the little girl told him about her father's threats. The evidence was relevant to go to the jury in contradiction of the statement of the defendant that the little girl had given him the warning.

[23] Assignments 36, 37, 38, 39, 40, 41, 42, and 43 are based on questions to Mrs. Vann, a witness for the state, in rebuttal, relating to certain details of the transaction as given in evidence by defendant, which details were specifically denied by the witness. There was no error in the admission of the evidence; it was in contradiction of the evidence of the defendant.

[24] Assignment 45 is without merit. The court did not err in overruling defendant's request made after argument to withdraw the case from the jury and continue it because of the improper evidence introduced and the improper argument of counsel. The court had excluded all the improper evidence, and the argument of counsel was not improper.

[25] Refused charge 1 asserts the same legal proposition as is set out in given charge 5.

[26] Charge 2 was properly refused. It singles out the evidence and is argumentative. 1 Mayfield's Dig. p. 170, § 13; Id. p. 173, § 18.

[27] Charge 3 was properly refused. It is argumentative and invades the province of the jury. 1 Mayfield's Dig. p. 173, § 18.

[28] Charge 4 is argumentative and singles out the evidence, and was properly refused. 1 Mayfield's Dig. p. 170, § 13.

[29] Charge 5 was properly refused. The jury should not be told to look to this fact, or that they may consider that fact, in reaching a conclusion as to the guilt of the defendant, or as to the existence of any material element of the offense charged. 1 Mayfield's Dig. p. 170, § 13.

[30] Charge 6 is faulty in that it omits the elements of self-defense.

[31-35] Charges 7, 8, 9, 10, 11, and 12 invade the province of the jury, and were properly refused.

The very clear oral charge of the learned trial judge fully covered every proposition of law involved in the case.

For the error indicated the motion for a new trial should have been granted, and the judgment of the circuit court is reversed, and the cause remanded.

Reversed and remanded.