61 So.2d 1

## WILLIAMSON v. STATE.

### I Div. 443.

Supreme Court of Alabama.

Oct. 23, 1952.

Si Garrett, Atty. Gen., and Thos. M. Galloway, Asst. Atty. Gen., for the State.

Wm. Grayson and Douglas Stanard, Mobile, for appellant.

GOODWYN, Justice.

Bradley Williamson was convicted of murder in the first degree and sentenced to death by electrocution. His appeal here is under the provisions of the automatic appeal statute. Act No. 249, approved June 24, 1943, General Acts 1943, page 217, Code 1940, Tit. 15, § 382(1) et seq., Pocket Part.

The indictment charged that appellant "unlawfully and with malice aforethought, killed Rayford L. Rodgers by shooting him with a pistol". Appellant pleaded "not guilty" and "not guilty by reason of insanity".

The crux of the State's evidence was that appellant killed Rodgers at the instigation of one Grant Kidd; and that the motive was the agreement of Kidd to pay appellant $250 to do the killing. It is not disputed that appellant killed the deceased, nor that the offer was made to pay the $250.

The theory of the defense is stated in brief of counsel for appellant as follows: "The gist of defendant's testimony was such as to conclusively lead a reasonable man to believe that the defendant was weak minded, simple, ignorant and stupid. It further tended to show that the defendant was dominated by Grant Kidd to the point of being entirely and definitely not a free agent, and that if and when any shooting was done by said defendant he was drunk at the time and said drunkenness was forced upon him either by physical force or undue influence on the part of Grant Kidd. * * * That the defendant was not operating under a free will prior to the time of any purported killing."

There are several questions presented by the record, and urged in brief of counsel for appellant, which call for our consideration. The first, which seems to be the principal insistence of counsel, is whether the testimony of the State's witnesses Ruby Bettis and Annie Lee Kidd, sisters of the deceased, admitted over defendant's objection, was so prejudicial as to require a reversal of this case.

Ruby Bettis testified as follows: That she was a sister of Rayford Rodgers, who was killed out there in Prichard; that he was thirty-seven years old; that he came to Mobile from Monroe County sometime before 1939; that she knew his wife, Frances Rodgers; that her brother worked at Southern Kraft and had been there a long time; that he first lived in Magazine Point with Frances, his wife, and next lived on Robinson Street in Prichard, where he was living at the time he was killed and still living with his wife; that she knew he was going to Veterans' School in Prichard; that he owned his home in Prichard, and had an automobile but didn't know if it was paid for; that he owned two other houses besides his home; that she didn't know anything about any insurance he had; that she was living a pretty good piece from him at the time he was killed; that she did not know Bradley Williamson and had never seen him before; that she did not know Grant Kidd; and that she was nowhere near the school the night her brother was killed.

Annie Lee Kidd testified that she was a sister of Rayford, the boy that was killed; that she was no relation to Grant Kidd; that she didn't know exactly how long Rayford had been married to Frances Rodgers; that she, Annie Lee Kidd, came to Mobile in 1943 and he was already down there; that he went off to the Navy and was gone about two or three years; that when he came back he was (sic) back to his wife; that he and Frances lived out there in Prichard at the time he was killed; that she knew her pretty well; that she knew about her brother owning property out there; that it was a house on one lot and one lot and two houses on the other; that he had a job; that he went to school, too;

that he got paid for going to school; that he had an automobile; that he had insurance; that "he was a Mason, he belonged to the Masonic", insurance too; that she didn't know anything about any money he might have had in the bank or about any bonds; that she didn't know anything about the killing; that she did not know the defendant or Grant Kidd.

It is insisted that the testimony of these two witnesses was "purely for the purpose of prejudicing the jury against the defendant * * * by attempting to show that the deceased was a 'good colored boy, a hard working, up-right, studious, home-owning colored boy'"; and that "the State was trying to put over to the jury that it was not a case of just a colored boy getting killed but a good colored boy had been killed".

Whether the deceased owned his home or other property, or whether he had served in the Navy, or had any insurance, could shed no light whatever upon the issues involved in this case. We fail to see the purpose of the State in eliciting such testimony from these two witnesses unless it was, as contended by appellant, to influence the jury in its deliberations. It may be that the purpose was to show the good character of deceased. But his character was not in issue. As stated in Webster v. State, 207 Ala. 668, 93 So. 545: "It is a well-recognized general rule that in homicide cases ordinarily the character or reputation of the deceased is not involved as an issue, and that proof relative thereto is generally inadmissible." It is clear that the admission of such evidence was error. The State, however, insists that even if there was error, it was error without injury, and under Supreme Court Rule 45, Code 1940, Tit. 7, Appendix, a reversal is not required. Rule 45, extracted, is as follows:

"Hereafter no judgment may be reversed or set aside, * * * in any * * * criminal case on the ground of * * * improper admission * * of evidence * * * unless in the opinion of the court to which the appeal is taken, * * *, after an examination of the entire cause, it should appear that the error complained of

has probably injuriously affected substantial rights of the parties."

Of similar import is the following provision in section 389, Tit. 15, Code 1940: "But the judgment of conviction must not be reversed because of error in the record, when the court is satisfied that no injury resulted therefrom to the defendant".

We have examined the entire record and we are not satisfied that the admission of such evidence was without injury to the substantial rights of the appellant. He was charged with and found guilty of murder in the first degree; and the evidence clearly supports such finding. But in so finding it was within the jury's discretion to prescribe as punishment either the death penalty or imprisonment in the penitentiary for life.

It is, of course, impossible for us to probe into the mental processes of the jurors, and thus ascertain whether the irrelevant evidence above noted had, in fact, any influence on them in arriving at their verdict. We must presume that they considered all of the testimony admitted by the trial court as legal evidence. We are not willing to say that the above-noted evidence, erroneously admitted, did not have some influence on the jury's decision affecting the substantial rights of appellant. Accordingly, a reversal and remandment is called for; and it is so ordered.

We see no occasion to detail the evidence with respect to the other insistences of appellant. Our conclusion is that they are without merit. It is enough to say that the proper predicate was laid for the introduction of the confession and there was no error in admitting it. As to whether appellant was drunk or insane at the time of the shooting, presented, under the evidence, a question for the jury. There was ample evidence to support the jury's conclusion that his condition in these respects did not affect his capacity to commit the offense of murder in the first degree, for which he was convicted.

As is required of us, we have carefully searched the record for errors which might have been prejudicial to the defendant. Code 1940, Tit. 15, sec. 389; Wesson v. State, 238 Ala. 399, 191 So. 249.

Our conclusion is that the record is free from error, except as above noted.

Reversed and remanded.

All the Justices concur.

