114 So.2d 394

**Edwin Ray DOCKERY, alias,**

v.

**STATE of Alabama.**

8 Div. 971.

Supreme Court of Alabama.

June 25, 1959.

Rehearing Denied Sept. 17, 1959.

Calvin, Gilchrist & Murphree, Decatur, for appellant.

MacDonald Gallion, Atty. Gen., and Geo. D. Mentz, Asst. Atty. Gen., for the State.

MERRILL, Justice.

Appellant was convicted of murder in the first degree and was sentenced to death by electrocution. His appeal is here under the automatic appeal statute. Act No. 249, approved June 24, 1943, p. 217; Code 1940, Tit. 15, § 382(1), et seq., 1955 Cum. Pocket Part.

Willie Heatherly, age twenty-seven, was last seen alive in Cullman, on the afternoon of August 9, 1958, in his black, 4-door 1958 Chevrolet. He was discovered dead on the afternoon of August 12, his hands tied behind his back with rubber tubing and a leather belt twisted tightly around his neck, in Morgan County about fifty yards north of the Cullman County line. His death was the result of strangulation from the belt applied around the neck, which broke the trachea. The body was badly decomposed when found.

There was an abundance of evidence which placed the appellant, who was from Fayette, in the vicinity of where the body was discovered, and put him in the automobile of the deceased after the crime was committed.

The State also showed inculpatory statements or confessions by appellant as follows:

1. Statement to Kathleen Nabors on August 12, 1958, that he had to leave Fayette because he had killed a man and he had to get out of town, that he had tied his hands behind his back, put a belt around his neck and drug him into the woods;

2. Statement to Martha Murphy on August 11 that he had a fight with a man whom he had left on the side of the road with a belt around his neck;

3. Showing Howard D. Morris the article in the Birmingham newspaper regarding

death of deceased and appellant later telling him that "I am the man that killed him;"

4. Detailed statement to Lt. Richard F. Jordan on August 13 and 14 that he killed the man and looped the belt over his neck and drug him out of the car into the woods face up;

5. Statements to R. W. Godwin on August 15, August 16 and August 17 regarding appellant's connection with the choking and killing of deceased.

Evidence for the State further tended to show that appellant was picked up by a motorist in Warrior around 4:00 P.M. on Saturday, August 9, brought to Cullman and that he was then wearing a white cotton sling with no blood on it.

According to some of his statements to the officers, the deceased later picked him up in Cullman, they rode around a while, then drove off on a dirt road, that after both of them had gotten out of the automobile, the deceased made perverted sexual advances on appellant, whereupon, appellant knocked him down, and in an ensuing fight, appellant chocked him until he was dead. He then removed deceased's belt and shoes, looped the belt around his neck, tied his hands behind his back with a rubber tube, took what money deceased had and left the body in the woods.

It was further shown that appellant drove the automobile of deceased into a filling station as Hartselle at 3:00 A.M., August 10, that the automobile was found in a parking lot in Birmingham on the morning of August 11, that appellant's fingerprints were on the automobile, and that a white cotton sling with blood stains of Type O on it was found in the automobile. It appears that appellant went back to Fayette on Sunday, the 10th, was picked up while hitchhiking west of Birmingham by Sgt. Howard D. Morris on Wednesday, August 13, who was en route from Fort Sill, Oklahoma, to Fort Dix, New Jersey, via Atlanta, Georgia. Appellant was apprehended in or near Atlanta. The record is not clear but the inference from the testimony is that he was taken to a hospital in Atlanta in an ambulance and from the hospital to the jail by Atlanta police.

The appellant did not take the stand but witnesses were introduced in his behalf to show that he was of unsound mind in support of his plea of not guilty by reason of insanity. He was ably represented at the trial and on this appeal by court appointed counsel.

██ Appellant contends that the court erred in three instances in admitting evidence which tended to prove the commission of other separate crimes or offenses by appellant.

The State called Donald Bullard as a witness. He testified that appellant drove the automobile of the deceased into the filling station where he worked at Hartselle, on August 10 at 3:00 A.M. He made positive identification of appellant. The solicitor asked this question: "What position were your hands in at the time the defendant left?" The objection was sustained. Appellant contends that this was the solicitor's way of letting the jury know that appellant had robbed the filling station, and that if the answer had been permitted, the witness would have testified that his hands were above his head.

But there is nothing in the record to support this contention and the objection to the question was sustained. An appellate court can only look to the record and not to the briefs to ascertain the facts, Walker v. State, 223 Ala. 294, 135 So. 438, or as stated in Christian v. Reed, 265 Ala. 533, 92 So.2d 881, 885, "Argument reciting matters not disclosed by record cannot be considered."

██ The next instance was in connection with the testimony of Sgt. Howard D. Morris, who testified that after he picked up appellant between Tuscaloosa and Birmingham, appellant asked him three or four times to read a newspaper article about the death of a man in Alabama. (This was the account of Heatherly's death, his body having been discovered on the 12th, the day before.) Being sleepy, Morris allowed appel-

lant to drive and he went to sleep around 8:30 P.M., somewhere between Birmingham and Atlanta. He testified that he later awoke, the car was stopped and when asked where appellant was, he answered that appellant "was leaning over me with a knife in his hand." After objection was overruled, the following then occurred:

"Q. What's the first thing he said? A. 'Don't move, you son-of-a-bitch. I will kill you like I did the man in Alabama.'

"Q. Did he say anything about the newspaper? A. He said, 'Don't you remember I tried to get you to read about a man killed in Alabama?' I said, 'Yes.' He said, 'I am the man that killed him.'"

Appellant contends that this was evidence of an assault on Morris, a separate and distinct offense. But the statements attributed to the appellant by the witness were admissible under the rule that the accused's acts, declarations and conduct against interest are competent. Blackwell v. State, 264 Ala. 553, 88 So.2d 347, and cases there cited. We have held that proof of the circumstances attending the narration of inculpatory statements or confessions which establish the voluntary nature of such statements is admissible. Drake v. State, 257 Ala. 205, 57 So.2d 817; Tillison v. State, 248 Ala. 199, 27 So.2d 43. The statements of appellant would hardly have made sense without the explanation of the circumstances under which they were uttered.

"Evidence which is relevant to establish some element of the offense, or material as to some issue in the case, is not rendered inadmissible by the fact that it also tends to show another offense committed by defendant." Snead v. State, 243 Ala. 23, 8 So.2d 269, 270, and authorities there cited. There was no reversible error in this instance.

■ The third occasion occurred a few questions later in the questioning of the same witness:

"Q. Don't tell any details of how you got out or what took place before you got out. You didn't leave that spot in your own car?

"Mr. Calvin: Wait a minute.

"A. I don't understand.

"Q. You didn't leave that spot where this defendant stopped and got on you with a knife—you didn't leave that spot in your own car?

"Court: Did you go in some other car?

"Q. How did you leave the spot? A. By foot.

"Q. By foot? A. Yes.

"Q. What happened to your car? A. This man stole it.

"Q. Who left—

"Mr. Calvin: We object and move to exclude that.

"Court: That is out.

"Q. Who drove your car away? A. Edwin Ray Dockery.

"Mr. Calvin: We object, as being incompetent, illegal, irrelevant and immaterial.

"Court: Sustained.

"Mr. Calvin: And ask the—move the court to exclude it and instruct the jury that isn't evidence.

"Court: Don't consider that. Whenever the court—

"Mr. Johnson: We offered it on flight.

"Court:—whenever the court sustains an objection to evidence, that is no longer in the case and not to be considered by you one way or the other.

"Mr. Johnson: We re-offer it on the proposition of flight of the defendant.

"Mr. Calvin: We renew the same objection.

"Court: Sustained."

Appellant contends that this evidence was admitted to show that appellant stole the automobile belonging to witness Morris. True, the witness testified that appellant stole the car, but the court sustained the objection, excluded the statement and, on motion of appellant, instructed the jury not to consider it. The court ruled with appellant and did everything that appellant asked to be done. Each ruling was favorable to appellant and there is nothing for us to review, except the question, under the automatic appeal statute, of whether this testimony and the court's action pertaining to it "was seriously prejudicial to the rights of the appellant."

This instance is similar to that described in Sims v. State, 253 Ala. 666, 46 So.2d 564, 565, where the death penalty was imposed for murder in the first degree. A witness for the State was asked:

"Q. Tell us how you know that to be the known finger prints of Claude B. Sims? A. On four, thirty, forty-seven Claude B. Sims was arrested for burglary and grand larceny."

The witness later made a reference to the "first arrest" which was not on the murder charge. Each time the defendant objected and moved for a mistrial. Each time the court excluded the statements and instructed the jury not to consider them, but overruled the motion for a mistrial. This court held that the testimony about "the former arrest came out incidentally, not in response to a question which directly called for it," and that no prejudice resulted to the defendant. Here also, the charge of a separate offense came out incidentally. The question was—"What happened to your car?" This question did not call for the answer—"This man stole it." As already shown, the court then sustained the objection, excluded the answer and instructed the jury not to consider it. We conclude that this was not seriously prejudicial to the rights of the defendant. Sims v. State, supra; Wyatt v. State, 35 Ala.App. 147, 46 So.2d 837; Henley v. State, 31 Ala.App. 433, 18 So.2d 98; Lumpkin v. State, 19 Ala.

App. 272, 97 So. 171; and Mosely v. State, 19 Ala.App. 335, 97 So. 247. To hold otherwise would establish a precedent by which an interested adroit witness could volunteer some similar objectionable statement and thereby stop the trial and defeat the progress of any case.

Appellant next contends that the State attacked his character when it had not become an issue in the case.

State's witness, Cletus Brown, testified that he picked appellant up in Warrior and carried him to Cullman on the afternoon of August 9th; that appellant had a sling on one of his arms and carried a pasteboard sign with the words "Fort Knox" written on it. He testified that appellant said he was in the Army; was returning to Fort Knox, after a visit to see his girl friend in Mobile, and that he had been in a wreck, torn up his automobile, had been released from the hospital that day and that he had been raised in Michigan. Appellant says that all of these statements were lies, that the jurors knew they were lies and that the testimony could have served only one purpose, which was to prove to the jury that the appellant was a chronic liar. Whether the jury knew these statements were untrue is matter dehors the record and is not for our consideration. Walker v. State, 223 Ala. 294, 135 So. 438; Christian v. Reed, 265 Ala. 533, 92 So.2d 881. Some of this evidence was not particularly relevant, but we are unable to say that it was prejudicial to appellant. By his own confession, appellant later that same day was riding as a hitchhiker in the car of the deceased shortly before he killed him. We think it helped to explain the pattern of appellant's operations in catching rides with motorists and gaining their confidence. Under the automatic appeal statute, we consider all testimony whether objection or exception was made thereto, Alberson v. State, 254 Ala. 87, 47 So.2d 182, 186, but we cannot say that this testimony "was seriously prejudicial to the rights of the appellant."

Appellant also urges that the court erred in allowing the State to introduce the original, recorded honorable discharge of the deceased into evidence, after deceased's mother had identified his signature on it. The purpose stated by the solicitor was to show that the deceased had blood Type O which was the same type blood found on the sling in deceased's car which had presumably been worn by appellant when he got in the car prior to the time he killed deceased. Appellant urges that the real purpose was to bolster the character of the deceased in order to show that he was not a sexual pervert as the appellant had claimed in some of his confessions. In homicide cases, character reputation of the deceased is not ordinarily an issue and proof relevant thereto is generally inadmissible and constitutes reversible error. Williamson v. State, 258 Ala. 24, 61 So.2d 1; Webster v. State, 207 Ala. 668, 93 So. 545. Under these authorities, it would have been error to admit any evidence as to the character reputation of deceased, there being no evidence of self-defense.

But this case is largely based upon circumstantial evidence, and when so, "testimony may permissibly take a wide range and any fact from which an inference may be drawn relating to the crime is competent evidence." Green v. State, 258 Ala. 471, 64 So.2d 84, 88. It has also been held that any testimony tending reasonably to establish the probability or improbability of the fact in controversy is admissible in evidence. Hunter v. State, 38 Ala.App. 351, 83 So.2d 737; Holland v. State, 25 Ala.App. 147, 142 So. 112.

Here, appellant was first seen wearing a clean sling on the afternoon of the murder. Later, a bloodstained sling was found in the car of the deceased, which had admittedly been driven by appellant after the murder. The blood on the sling was Type O. The discharge showed the blood of the deceased to be Type O. We think these facts presented a situation where the discharge was admissible to show the type blood of deceased. That is the basis on which the trial court allowed its introduction. Appellant could have had it limited for that purpose had he requested the court to so instruct the jury. Moreover, the discharge is dated 25 February 1954, some four and one-half years prior to deceased's death. We can see no probative value as to his reputation in a document so remote in time from the date of the crime; and as already noted, it was admissible to show his blood type, not to show that he had previously served in the Army.

Title 60, § 52, Code 1940, provides that a recorded honorable discharge, or a certified copy thereof, "shall have the same standing and be governed by the same laws of the State of Alabama as now pertain to the admissibility in evidence in courts of this state of recorded deeds and mortgages and other recorded instruments." See also, Wigmore on Evidence, Third Edition, § 1675a.

We have spoken of the honorable discharge as one paper. Actually, two different pieces of paper comprise the exhibit (No. 18). The first is WD AGO Form 55, the "Honorable Discharge" which, of course, carries no information as to blood type. The other sheet of the exhibit is the Report of Separation, DD Form 214, which was recorded with the honorable discharge. We have treated these two papers as an entity as they were so treated in the court below.

In accordance with our duty in cases of this character, we have examined the record for any reversible error, whether pressed upon our attention or not. We find no reversible error in the record and the judgment is due to be and is affirmed.

Affirmed.

All the Justices concur.