The appellant, James Michael Moore, was convicted of capital murder, see § 13A-5-40(a)(10), Code of Alabama 1975, two or more persons murdered by one act pursuant to one scheme or course of conduct. The appellant waived the sentencing phase of his trial, and the trial court sentenced him to life imprisonment without the possibility of parole.
 I.
The appellant argues that the trial court committed reversible error in allowing the indictment to proceed on the "one scheme" or "course of conduct" theory. The appellant argues that the evidence did not indicate that he committed the two murders pursuant to a plan or scheme or a pattern of conduct evidencing a continuity of purpose.
The indictment against the appellant charged:
 ". . . the Grand Jury of said County charges that before the finding of this Indictment, JAMES MICHAEL MOORE, whose true name is otherwise unknown to the Grand Jury, pursuant to one scheme of course of conduct, did intentionally cause the death of Judy Kay Lumpkin by striking her head with a blunt instrument, and did intentionally cause the death of Jerry Michael Estill, by striking his head with a blunt instrument, in violation of Sec. 13a-5-40(a)(10) of the Code of Alabama."
However, the extensive evidence presented by the State revealed that the appellant and an accomplice left together at two o'clock in the afternoon to go play pool. They encountered Jerry Michael Estill at the bar where they were playing pool and, shortly thereafter, met Judy Kay Lumpkin at the next bar they visited. These four left that bar together in the accomplice's vehicle. The appellant killed Estill by beating him on the head with a car tool, while the accomplice had sex with Lumpkin. It was unclear whether Lumpkin was aware that Estill had been killed. Following Estill's death, the remaining three visited a mobile home belonging to the accomplice's father, left to purchase beer for the father, and took a detour on their return trip after buying the beer. During the detour, the accomplice again had sex with Lumpkin but, when she left the car, the appellant attempted to beat her to death, because he believed that she might have seen him kill Estill. The appellant then dragged her to the water and threw her in, but when she hit the water, she revived and grabbed at his crotch. He stated that she told him that she knew he would kill her, but that she would come back "to get him." The appellant *Page 802 
then forced her head between his legs and began to beat her head with a concrete block. He then threw her body in the water. Apparently, prior to disposing of the body he had removed some of Lumpkin's jewelry. The appellant got fresh clothes from the accomplice's father and disposed of the clothes he had been wearing. The appellant and the accomplice drove to a friend's house to sell the stolen jewelry. They got $60 in cash and some marijuana in return for the jewelry. The accomplice then also got some money his employer owed him. They disposed of certain evidence of the killings and left for Miami, where the accomplice's mother lived.
This evidence was clearly sufficient to indicate that the killings occurred as the result of one course of conduct that began one evening and was completed in the early morning hours of the following day. " 'An indictment is sufficient if it apprises the accused with a reasonable certainty of the nature of the accusation against him so that he may prepare his defense and plead the judgment of conviction as a bar to any subsequent prosecution for the same offense.' " Moore v. State,659 So.2d 205, 208 (Ala.Cr.App. 1994), quoting Rice v. State,620 So.2d 140, 142, (Ala.Cr.App. 1993).
 " 'One of the functions of an indictment is to adequately inform the accused of the crime charged so that a defense may be prepared. Ex parte Washington, 448 So.2d 404, 407 (Ala. 1984). A variance in the form of the offense charged in the indictment and the proof presented at trial is fatal if the proof offered by the State is of a different crime, or of the same crime, but under a set of facts different from those set out in the indictment. Ex parte Hightower, 443 So.2d 1272, 1274 (Ala. 1983).' "
 Ex parte Hamm, 564 So.2d 469, 471 (Ala.), cert. denied, 498 U.S. 1008, 111 S.Ct. 572, 112 L.Ed.2d 579 (1990).
 " '. . . "[T]here must be material variance between indictment and proof before a conviction will be overturned for that reason." Ex parte Collins, 385 So.2d 1005, 1009 (Ala. 1980) (emphasis in original). "The law of this state is well settled that '[t]here is no material variance where there is proof of so much of an indictment as shows the defendant committed a substantial offense specified therein.' " House v. State, 380 So.2d 940, 943 (Ala. 1979). Compare Ex parte Hightower, 443 So.2d 1272 (Ala. 1983) (fatal variance between indictment charging sexual misconduct without consent and proof of sexual misconduct with consent obtained by artifice.)'
 "Lipham v. State, 616 So.2d 396, 397 (Ala.Cr.App. 1993)."
Pace v. State, 652 So.2d 321, 324-25 (Ala.Cr.App. 1994), cert. denied, 652 So.2d 328 (Ala. 1994).
In the present case, there was no material variance between in the proof presented by the State and the offense charged in the indictment. The appellant was sufficiently apprised of the nature of the offense with which he was charged.
 II.
The appellant argues that the trial court committed reversible error by admitting into evidence testimony concerning prior bad acts of the appellant. The appellant refers to testimony by the accomplice's wife concerning her conversation with the appellant following the offenses. The accomplice's wife testified that the appellant told her that he had murdered the victims because they had attempted to rob them. He told her in detail about killing the female victim. The witness testified that when she became upset, the appellant told her not to worry, that he "had done this plenty of times before — put bodies in the river and they had never been found." Following this testimony, the appellant made a motion for a mistrial; the prosecutor responded that the substance of that testimony was in a statement given by the witness that had been provided to the appellant. The trial court denied the motion and the witness again testified that the appellant stated that he "had killed other people and put them in the river and they had never been found, and then he just laughed." *Page 803 
This testimony was clearly admissible. The general rule in Alabama is that the acts and declarations of the accused against his interest and having a relation to the offense charged are always competent evidence. In Nicks v. State,521 So.2d 1018, 1028-29 (Ala.Cr.App. 1987), aff'd, 521 So.2d 1035
(Ala.), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916,101 L.Ed.2d 948 (1988), the defendant had made a statement during a robbery to a victim that, if the victim did not do as he was told, the defendant would kill him "like he did that man up the street." This Court held that that statement, although concerning a collateral offense, was admissible as a declaration against interest.
 "The general rule in this state relative to an accused is that the acts, declarations, and conduct of the accused, against interest, are always competent evidence. Pope v. State, 365 So.2d 369 (Ala.Cr.App. 1978); Dockery v. State, 269 Ala. 564, 114 So.2d 394 (1959); Blackwell v. State, 264 Ala. 553, 88 So.2d 347 (1956). Any conduct or declaration of an accused having a relation to the offense charged, indicating a consciousness of guilt, is admissible as evidence against him. Conley v. State, 354 So.2d 1172 (Ala.Cr.App. 1977).
 "In Dockery v. State, supra, the Alabama Supreme Court addressed an issue very similar to the one before us. In Dockery, the trial court allowed the admission of testimony in the defendant's murder trial to the effect that the defendant, during an apparent holdup or assault which was committed shortly after the murder, stated the following to the victim: 'Don't move, you son-of-a-bitch. I will kill you like I did the man in Alabama.' Dockery contended that the evidence of the subsequent, collateral, offense was inadmissible, for it was evidence of a separate and distinct offense. The supreme court held that the statement was admissible under the rule that the accused's acts, declarations, and conduct against interest are competent, citing Blackwell v. State, supra. The court held, 'Evidence which is relevant to establish some element of the offense, or material as to some issue in the case, is not rendered inadmissible by the fact that it also tends to show another offense committed by defendant.' 269 Ala. at 568, 114 So.2d at 397 (quoting Snead v. State, 243 Ala. 23, 24, 8 So.2d 269, 270 (1942)). This rule is sometimes stated to the effect that, if such evidence is admissible on general grounds, it is not rendered inadmissible by the fact that it discloses offenses other than the one with which the defendant is charged; that the test of admissibility is the connection of the facts proven with the offense charged; and that, where such evidence is relevant and tends to prove the defendant's guilt, he cannot by multiplying his crimes diminish the volume of competent evidence against him. Thomas v. State, 132 Fla. 78, 181 So. 337 (1938); People v. Hall, 308 Ill. 198, 139 N.E. 123 (1923). See State v. Martin, 49 Utah 346, 164 P. 500 (1917), for a similar case where the defendant implicated himself in both the charged and collateral crimes by letters he had written. See also Ringstaff v. Commonwealth, 275 S.W.2d 946 (Ky. 1955). Further, in discussing the admission of details concerning a collateral offense, the court held that proof of the circumstances attending the narration of an inculpatory statement or confession which establish the voluntary nature of such statement is admissible, and in specifically addressing the situation before it, the Dockery court noted that the statements of Dockery would hardly have made sense without the explanation of the circumstances under which they were uttered. See also Drake v. State, 257 Ala. 205, 57 So.2d 817 (1952); Tillison v. State, 248 Ala. 199, 27 So.2d 43 (1946).
 "In another similar case, People v. Glab, 15 Cal.App.2d 120, 59 P.2d 195 (1936), a prosecution of a wife for the murder of her husband, testimony as to the wife's participation in a brawl subsequent to the killing wherein she drew a gun and threatened to kill, stating that she had already killed one man, was held admissible as an admission to the previous killing and proved possession of a gun, notwithstanding the tendency of the testimony to prejudice the wife in the minds of the jurors. The court held, 'The fact that incidentally such testimony may have involved facts as to the commission *Page 804 
of another crime, or may have had a tendency to prejudice the accused in the minds of jurors, is no valid objection to its admission where, as here, the testimony was proper as tending to connect the accused with the crime charged.' 15 Cal.App.2d at 124, 59 P.2d at 197-98."
Nicks v. State, supra, at 1028-29.
This statement in the present case was made to the witness just following the offenses and before the appellant and the accomplice left for Miami. It was admissible as a declaration against interest.
 III.
The appellant argues that the trial court committed reversible error by allowing into evidence statements made by Lumpkin outside of the presence of the appellant and not admitted as part of the res gestae. The appellant refers to the testimony of the accomplice's father concerning a statement that the victim made to him on the night or early morning hours of the offense. The father testified that the accomplice, the appellant, and Lumpkin arrived at his trailer and that the accomplice "hollered" from outside and asked his father if he "wanted some pussy." The father testified that he had been drinking and said that he opened the door of the trailer for the accomplice. He testified that he went to his bedroom and that the accomplice followed. He testified that the female victim came into the bedroom. The father said that after the accomplice left, the victim whispered to the father that she was afraid that the appellant "was going to do something to her." He testified that he then told Lumpkin to get out of his bedroom. The record indicates that, when the prosecutor asked him what the victim had whispered, the appellant objected on the grounds of hearsay and, after his objection was overruled and following the witness's testimony concerning Lumpkin's statement, the appellant objected on grounds that the witness was "not repeating what [Lumpkin] said. This is just an opinion."
However, this testimony was admissible because it was part of the res gestae of the offense and was introduced to show the victim's state of mind, that she was afraid.
 " 'Res gestae may broadly be defined as matter incidental to the main fact and explanatory thereof, and includes acts and words which are so closely connected therewith as to constitute a part of the transaction; such acts and words must be spontaneous and so related to the occurrence in question as reasonably to appear to be evoked and prompted thereby. In other words, the term "res gestae" comprehends a situation which presents a startling or unusual occurrence sufficient to produce a spontaneous and instinctive reaction, during which interval certain statements are made under such circumstances as to show lack of forethought or deliberate design in the formulation of their content. Statements which conform to these requirements and which in some way elucidate, qualify, or characterize the act in question are admissible in evidence as an exception to the hearsay rule.'
 "R. Williams, Williams' Alabama Evidence § 139 (1967) (footnotes omitted). 'A person's statement directly asserting or circumstantially indicating the existence of an emotion in him such as love, hatred, fear, malice, mental pain or their opposites, is admissible under the present hearsay exception.' C. Gamble, McElroy's Alabama Evidence, § 262.01(11) (4th ed. 1991) (footnotes omitted).' "
Jackson v. State, 629 So.2d 748, 756 (Ala.Cr.App. 1993). See also Henderson v. State, 583 So.2d 276, 294-95 (Ala.Cr.App. 1990), aff'd, 583 So.2d 305 (Ala. 1991), cert. denied,503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992).
The trial court did not abuse its discretion in overruling the appellant's objections to the victim's statement; the statement was part of the res gestae.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur. *Page 1196