On this appeal, Rayford Connor, the appellant, argues (1) that his probation was improperly revoked, (2) that he should have been granted a continuance of his trial for burglary, and (3) that the trial judge improperly allowed the indictment to go into the jury room during the deliberation of the jury.
In March of 1982, Connor pled guilty to seven cases of possession of a forged instrument in the second degree. He was given a split sentence and ordered to serve one year with the remaining five years on probation.
In December of 1982, the State moved to revoke Connor's probation for a burglary he committed in October of 1982. The revocation was originally scheduled for February and counsel was appointed. However, the hearing was reset five times. The trial judge found that four of these times were "either because the Defendant or the Defendant's attorney was not prepared, the Defendant's attorney had another matter pending, or whatever."
On March 11, 1983, the Grand Jury returned an indictment against Connor for Burglary III. This indictment was based on the same incident contained and detailed in the delinquency report filed in December.
Finally, the revocation hearing was scheduled for March 17th. On that day, the defendant was arraigned on the burglary charge, entered a plea, and was tried and convicted by a jury. The trial judge then revoked the probation and ordered a presentence investigation. In April, Connor was sentenced as an habitual offender to fifteen years' imprisonment.
On March 17th, when defense counsel discovered that Connor was going to trial, he requested a continuance "because the Defendant had not been arraigned." In response to this, the trial judge found: "Clearly he has known since February 2, 1983, of this case, because that is the date the original motion to revoke was filed. It was understood by everyone that today the motion to revoke would be confessed, as well as there would be a plea in this particular case. However, the Defendant was advised that he does not wish to do that." The judge then arraigned Connor. Connor pled "not guilty by reason of entrapment" and the trial judge read the indictment. The judge also stated that he had told defense counsel about the indictment six days earlier.
Defense counsel requested "a reset that we may discover any matters that are discoverable." In response, the judge ordered the district attorney to give defense counsel his "whole file".
Although Connor was represented by appointed counsel, defense counsel requested additional time to allow Connor "to perhaps hire an attorney of his own choosing." This was denied and Connor was put to trial.
The State's case was very brief and consisted of the testimony of the owner of St. Stephens Pharmacy, who merely established the fact that the pharmacy had been broken into, and the arresting officer who observed Connor "behind the counter at the cigarette rack taking cartons of cigarettes and placing them in a box." In the box the officer also found a crowbar.
After the State rested, the trial judge, at the request of defense counsel, issued a subpoena for co-defendant Leslie Fisher. While waiting on this witness to arrive, defense counsel informed the judge that he had advised Connor that it was against his better judgment for his client to go to trial, that it "was in his best interest to both *Page 862 
confess the revocation and accept (the) offered plea bargain", and that Connor had "insisted on going to trial" despite the fact that counsel had advised Connor of "the perhaps insufficiency of the defense which he discussed with me."
Defense counsel talked with the co-defendant and then released him as a witness. Counsel then requested a continuance alleging that he had not had "ample or enough time to research or talk with any of the witnesses that might be available." Under questioning by the trial judge, defense counsel admitted that he did not know what witnesses he might need or that might be available; and that he had asked his client and still had no knowledge of any witness that would be beneficial to the case. The judge stated: "You know, if he (Connor) doesn't know of any — I'll be happy to issue an instanter for anybody you want to issue, but he's told you there's not any."
The defense rested without presenting any evidence. After the jury found Connor guilty, the judge revoked his probation and ordered a presentence investigation. There was no motion for new trial.
 I
Connor argues that the fundamental fairness guarantees of due process were violated by the manner in which his probation was revoked. He maintains that he was entitled to a revocation hearing as required by Armstrong v. State, 294 Ala. 100,312 So.2d 620 (1975).
Armstrong is grounded on Morrissey v. Brewer, 408 U.S. 471,92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), which held that parole revocation requires "an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior."408 U.S. at 484, 92 S.Ct. at 2601. The principles outlined inMorrissey were applied to probation revocation hearings byGagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756,36 L.Ed.2d 656 (1973).
Here, we find substantial compliance with Armstrong. Instead of having a probation revocation hearing at which the court would not be bound by strict rules of evidence and the State's evidence need only reasonably satisfy the trial judge, Connor was tried on the indictment for the criminal offense which was the basis of the delinquency report. This was more than due process requires to revoke his probation. "(N)either our statute, . . . nor the Constitution requires a final conviction of probationer on the offense charged before his probation may be revoked." Free v. State, 392 So.2d 857, 859 (Ala.Cr.App. 1980), cert. denied, Ex parte Free, 392 So.2d 859 (Ala. 1981).
In Moss v. Patterson, 555 F.2d 137 (6th Cir.), cert. deniedsub nom. Kette v. Moss, 434 U.S. 873, 98 S.Ct. 221,54 L.Ed.2d 153 (1977), the appellant's parole was revoked after he pleaded guilty to several charges. The Sixth Circuit Court of Appeals reversed on the grounds that the appellant was not given an opportunity to present evidence in mitigation as required byMorrissey, supra. The situation in the present case, however, is markedly different. Connor did not plead guilty to the burglary charge. He was given a full trial and could have presented evidence in his defense or as mitigation. Moreover, he has not at any time asserted that he has any evidence to present in mitigation. See Jamerson v. State, 394 N.E.2d 222
(Ind.App. 1979).
To remand this case for a revocation hearing would accomplish nothing. It would not provide Connor with any right or opportunity to exercise any right which he has not already had, such as an opportunity to present evidence in mitigation. Under the facts of this case, we find that the manner in which Connor's probation was revoked did not violate the fundamental fairness guarantees of due process.
 II
It is also argued that the trial judge abused his discretion in denying a continuance. The trial judge is characterized as *Page 863 
having exercised a "roughshod manner . . . in refusing to continue the trial . . . pending discovery of any and all exculpatory material . . ., or the location of any and all witnesses who could aid in the presentation of the complex defense such as entrapment."
"The reversal of a conviction because of the refusal of the trial judge to grant a continuance requires `a positive demonstration of abuse of judicial discretion.' Clayton v.State, 45 Ala. App. 127, 129, 226 So.2d 671, 672 (1969)."Beauregard v. State, 372 So.2d 37, 43 (Ala.Cr.App.), cert. denied, Ex parte Beauregard, 372 So.2d 44 (Ala. 1979). "This Court must determine whether or not there has been an abuse of discretion in light of the circumstances of each case, looking particularly to those reasons the defendant presented to the trial judge." Tucker v. State, 429 So.2d 1165, 1169
(Ala.Cr.App. 1983).
Connor's reasons for requesting the continuance were to engage in discovery and to locate witnesses. However, defense counsel's assertion that he had advised the defendant that it was in the defendant's best interests to "both confess the revocation and accept (the) offered plea bargain in this matter" certainly suggests that counsel had engaged in some investigation of the burglary charge. Neither counsel nor Connor has at any time asserted that there exists any additional evidence which would be material and competent or any witnesses to find.
In view of the facts that the trial judge made the prosecution disclose its entire file to defense counsel, that Connor indicated at trial that he had no knowledge of any potential witness, and that the trial judge afforded counsel every opportunity to subpoena any witness he might have, we find no abuse of the discretion of the trial judge in denying the continuance. The speculative allegations of defense counsel regarding the possible existence of potential witnesses or evidence are insufficient to show that the trial judge abused his discretion.
We do not wish to intimate by what we have said here that we approve of the manner in which this case was handled. Connor appeared in court for a scheduled probation revocation hearing and instead was tried on the underlying burglary charge. We find, however, that he was in no way prejudiced by this action under the circumstances involved. Connor was fully aware of the facts upon which the burglary charge was based, for they were clearly set forth in the motion to revoke probation which was served upon him February 11, 1983. Any evidence the defendant could have offered to prove the defense of entrapment could also have been used to show mitigation at the revocation hearing and the defendant had had since February 11 to prepare that evidence. Further, the State presented only two witnesses, who were obviously the same witnesses it would have called at the revocation hearing and who testified to essentially the same information contained in the motion to revoke probation. In all honesty, we conclude that there was little the defendant could offer to combat the overwhelming evidence presented by the State. Cf. Williams v. State, 356 So.2d 216 (Ala.Cr.App. 1977), cert. quashed, 356 So.2d 219 (Ala. 1978) (the trial court did not err in ordering trial for sale of marijuana prior to trial for possession of marijuana, even though the possession case appeared on the docket ahead of the sale case and the defendant desired to try the possession case first, where the defendant was prepared as well as he could be for the sale case and there was no showing of any prejudice to the defendant).
 III
The trial judge deliberately allowed the indictment to go into the jury room during the deliberation in violation of A.R.Crim.P.Temp. 14. See Ex parte Allen, 414 So.2d 993, 995
(Ala. 1982). We find that this action was invited by defense counsel who in his closing argument to the jury stated, "by way of explanation as to why this trial perhaps has been haphazard or the defense been so slack in this case, it is *Page 864 
because the Defendant was only served with his indictment this morning."
In charging the jury, the trial judge instructed:
 "Under our new rules the indictments are not supposed to go back to the jury room with you, but I'm going to let this indictment go back to the jury room with you. It sets out again what he's charged with. In addition, it sets out the day on which I signed the indictment in this case and I told you that this morning when I read the indictment to you. When you get back in the jury room, read the indictment and that's the charge. Down here it will show the date that I signed the indictment as the Judge in charge of this Grand Jury, and the date is March 11, 1983. Nobody is trying to hide anything in the world in this case at all."
The indictment itself merely stated the charge. It contained no prejudicial allegations. Only one alias was alleged, that being "Rayford Conner." Rule 14 provides that "the court may, in its discretion, submit the charges to the jury in a complex case." The comment following this rule explains: "The rule, therefore, allows the judge the discretion to give the jury a copy of the charges when he feels it would be helpful to do so." Allen, 414 So.2d at 996. Since the trial judge had a specific reason for permitting the indictment to go to the jury and since that indictment was not unnecessarily prejudicial, we find no abuse of discretion and no error in the judge's action.
Our review convinces us that this case is due to be affirmed.
AFFIRMED.
All Judges concur.