James Eddins was convicted for theft of property in the first degree, fined $10,000, and sentenced to fifteen years' imprisonment. Six issues are raised on this appeal from that conviction. *Page 575 
 I
Eddins contends that the trial court erred in denying his motion for a change of venue based on prejudicial pretrial publicity. He alleges that this publicity was widespread throughout Houston County and that "[m]any, if not most, of these newscasts are judgmental and editoralize or state opinions." Appellant's brief, p. 1314.
In denying the motion for change of venue, the trial court issued a written order:
 "The Court does not find that the pretrial publicity by the news media has been of such volume and context, indicating guilt, as would preclude the Defendant from receiving a fair trial from a fair and impartial jury in violation of his constitutional rights. Mere coverage of a case involving criminal charges by the news media does not in and of itself preclude a Defendant from receiving a fair trial from a fair and impartial jury."
These findings are supported by the record.
At the hearing on the motion for a change of venue, the defense presented eight witnesses: the news directors of three radio stations and three television stations that broadcast in Houston County, and an assignments editor of the newspaper,The Dothan Eagle. From August of 1985 until February 26, 1986, when Eddins was tried, there were thirty-three newscasts on radio and television relating to the alleged offense or pretrial proceedings and four articles in the newspaper. Seven of these witnesses testified to the effect that Eddins received "average" coverage; that the publicity was not "extensive or wide spread compared to other cases" (RM. 25); that the case received no more notoriety than other cases (RM. 31); that while the case received "good coverage" (RM. 59), it did not receive a "large amount" (RM. 71) and did not receive "more than normal" coverage (RM. 72); that the case was not as "popular" and did not receive as much coverage as other cases (RM. 129); and that although the case had "some degree" of notoriety, "more than just a normal criminal case" (RM. 144), its coverage was "about average to a case that's covered" (RM. 147). Although this case was of the type the public would be interested in (RM. 166), it received "no more [reporting] than any other case" (RM. 177). One of the eight witnesses was not asked to compare the news coverage given this case with that given an "average" or "normal" criminal case.
The motion for change of venue was properly denied.
 "Absent a showing of abuse of discretion, a trial court's ruling on a motion for change of venue will not be overturned. Ex parte Magwood, 426 So.2d 929, 931 (Ala.), cert. denied, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1355
(1983). In order to grant a motion for change of venue, the defendant must prove that there existed actual prejudice against the defendant or that the community was saturated with prejudicial publicity. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Franklin v. State, 424 So.2d 1353
(Ala.Crim.App. 1982). Newspaper articles or widespread publicity, without more, are insufficient to grant a motion for change of venue. Anderson v. State, 362 So.2d 1296, 1298 (Ala.Crim.App. 1978). As the Supreme Court explained in Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961):
 " 'To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. . . .'
 "The standard of fairness does not require jurors to be totally ignorant of the facts and issues involved. Murphy v. Florida, 421 U.S. 794, 799-800, 95 S.Ct. 2031, 2035-2036, 44 L.Ed.2d 589 (1975). Thus, '[t]he proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through *Page 576 
the voir dire examination.' Anderson v. State, 362 So.2d 1296, 1299 (Ala.Crim.App. 1978)." Ex parte Grayson, 479 So.2d 76, 80 (Ala.), cert. denied, Grayson v. Alabama, ___ U.S. ___, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985).
The record does not contain the voir dire examination of the jury.
Applying the above principles to this case, we find that the motion for change of venue was properly denied.
 II
Eddins was indicted for theft by deception. The State proved that Gerald Greathouse, relying upon Eddins' representation, gave Eddins $10,000 to invest in an arrangement in which Central Bank was to lease computer equipment to the Alabama "Department of Transportation." Greathouse met Eddins in 1983 and Eddins had prepared his taxes.
Eddins argues that "[t]he District Attorney offered evidence of other transactions between Mr. Greathouse and Mr. Eddins to magnify and confuse the evidence of the transaction in this indictment." Appellant's brief, p. 17.
On direct examination, Greathouse testified that he had given Eddins $25,000 to purchase an annuity and $25,000 to invest in Enterprise Investors. He stated that he gave Eddins $10,000 on June 7 and 8, 1984, on the computer lease and only received "a small amount" back.
On cross-examination, defense counsel introduced five checks Greathouse had allegedly received from Eddins. The checks totaled $7,461.61 and were dated in August, September, and October of 1984, and May of 1985. Greathouse testified, "I couldn't say for sure that any of that is off the lease. But, this is return off of money I had invested, supposedly had invested. But, where any of it is from the lease or not, I couldn't say."
On redirect examination the State was allowed to explore other financial dealings between Eddins and Greathouse in order to explain the checks. The trial court overruled defense counsel's objections and stated "you brought these checks up and he has the right to explain them. And, that is what he is doing and I overrule you."
The object of redirect examination is to answer any matters brought out on cross-examination. C. Gamble, McElroy'sAlabama Evidence § 439.01(1) (3rd ed. 1977). "[T]he simplest rules of evidence permitted the state on the redirect examination of this witness to go into this question which had been brought out by the defendant." Jones v. State,22 Ala. App. 141, 142, 113 So. 478 (1927). "[I]t is a general principle that where a matter has been gone into by one party to a cause, the other party has the right to explain away anything, if he can, that may have been brought out to his detriment." Johnson v. State, 265 Ala. 360, 364,91 So.2d 476 (1956).
To the extent that these other financial relations and activities between Greathouse and Eddins tended to show that Eddins had defrauded Greathouse in the past, they were admissible to prove Eddins' criminal intent in the charged transaction.
"[T]he crime of false pretenses is included in the general definition of theft." Commentary to Alabama Code 1975, § 13A- 8-5. "The crime of false pretense has the requisite intent to defraud as its primary element. Therefore, it is generally admissible to show other similar criminal acts to prove this intent and such constitutes one of the major exceptions to the general rule that one cannot introduce prior criminal acts."McElroy § 70.01(10).
 "[W]hen one's [motive] or intent is at issue, his acts, statements and conduct on other occasions which have a bearing upon his [motive] or intention upon the occasion in question are competent evidence. See generally, 29 Am.Jur.2d Evidence § 365 (1967). In fraud cases, where intent, knowledge and scienter constitute essential elements of the offense, evidence of similar frauds and misrepresentations are commonly admissible. Roan v. Smith, 272 Ala. 538, 133 So.2d 224 (1961); Johnson v. Day, 230 Ala. 165, 160 So. 340 (1935); *Page 577 
37 Am.Jur.2d Fraud and Deceit § 456 (1968). In passing upon the admissibility of such collateral matters, great latitude must be extended so as to afford the admission of any relevant evidence bearing upon the ultimate issue of fraud. Mid-State Homes, Inc. v. Johnson, 294 Ala. 59, 311 So.2d 312 (1975)." Dorcal, Inc. v. Xerox Corp., 398 So.2d 665, 670-71 (Ala. 1981).
"This being a case of circumstantial evidence, testimony may permissibly take a wide range and any fact from which an inference may be drawn relating to the crime is competent evidence." Green v. State, 258 Ala. 471, 475,64 So.2d 84 (1953). "[A]ny testimony tending reasonably to establish the probability or improbability of the fact in controversy is admissible in evidence." Dockery v. State, 269 Ala. 564,570, 114 So.2d 394 (1959).
 III
Eddins' motion for judgment of acquittal made after the defense had rested its case is without legal or factual merit. The State presented a clear and uncomplicated prima facie case of theft by deceit, and, while that evidence was not overwhelming, it was sufficient.
The prosecution introduced into evidence an "assignment of lease" which stated that it was an "agreement made and entered into by and between Central Bank of the South, N.A., a Delaware Corporation, and James R. Eddins an individual, Donald W. Dvorak and Catherine J. Dvorak as Joint Tenants, Gerald J. Greathouse and Queen E. Greathouse as Joint Tenants." The agreement specifically described the computers and related equipment which Central Bank had leased to the "State of Alabama, Department of Transportation."
The State proved that this assignment was totally false. Central Bank was not registered as a Delaware Corporation. There was no Alabama Department of Transportation. The "Marlo Brown" who signed the assignment as "Asst. Vice President" had never been employed by Central Bank. The serial numbers for, and descriptions of, the computers and equipment were not legitimate.
Attached to the assignment was a financial "analysis of lease purchase prepared by: Southern Financial Systems." Checks entitled "Southern Financial Systems, Inc." were signed by Eddins and made payable to Greathouse. There was no Southern Financial Systems, Inc., registered in Alabama.
Greathouse testified that in giving Eddins $10,000 to invest in the computer lease, he relied on Eddins' representations that he "had checked it out thoroughly," that "it was good and sound," and that Eddins had himself invested $75,000 in it.
All this evidence was presented on the State's case in chief. Eddins' defense was that he had no intent to defraud Greathouse and that he did not know that the lease assignment was false when he advised Greathouse to invest.
Theft by deception occurs when one "[k]nowingly obtains by deception control over the property of another, with intent to deprive the owner of his property." Alabama Code 1975, §13A-8-2(2). "Deception occurs when a person knowingly: a. Creates or confirms another's impression which is false and which the defendant does not believe to be true." §13A-8-1(1). "In a theft trial intent is a question for the jury. . . . Furthermore, fraudulent intent need not be proven by direct substantive evidence, but rather, can be inferred from conduct of defendant and circumstances of the case."McMurphy v. State, 455 So.2d 924, 928 (Ala.Cr.App. 1984) (citations omitted). "[I]n appropriate cases, . . . the question of intent is always a jury question." Hamilton v.State, 283 Ala. 540, 546, 219 So.2d 369, cert. denied,Hamilton v. Alabama, 396 U.S. 868, 90 S.Ct. 134,24 L.Ed.2d 121 (1969). The issue of Eddins' guilt was properly submitted to the jury.
 IV
The trial court, over the objection of defense counsel, sent the indictment to the jury for their consideration during their deliberation because "of the complexity of *Page 578 
the case" and because the indictment was "a somewhat complex statement of the charge there." In so doing, the court instructed the jury that the indictment was not evidence of guilt.
There was no error in this case because (1) the court had a specific reason for allowing the indictment to go to the jury, (2) the court charged the jury that the indictment was not evidence, and (3) the indictment did not contain any unnecessarily prejudicial allegations. Thompson v.State, 473 So.2d 1205, 1209 (Ala.Cr.App. 1985); Connorv. State, 447 So.2d 860, 864 (Ala.Cr.App. 1984).
 V
Eddins contends that, because the "undisputed evidence" is that he paid back $6,210.18 of the $10,000 Greathouse gave him to invest, restitution should have been $8,789.82 and not $10,000. Appellant's brief, p. 21. It is not clear and "undisputed" that all of the $6,210.18 Eddins paid Greathouse was the result of the $10,000 investment or whether it resulted from the other investments Greathouse had with Eddins. There was no objection to the amount of restitution ordered by the trial court either at the sentencing hearing or in the motion for new trial. Without objection, the issue of restitution is not preserved for review. Stork v. State,475 So.2d 622, 623 (Ala.Cr.App. 1984), reversed on other grounds, Exparte Stork, 475 So.2d 623 (Ala. 1985). Although no specific form of objection is required, § 15-18-69, Code of Alabama (1975), here, defense counsel did not express any disagreement with the amount of restitution. Cf. Ex parteClare, 456 So.2d 357, 359 (Ala. 1984).
 VI
Greathouse testified that, after he found out there was no lease, he "had trouble finding" Eddins, who had left the Dothan area. Greathouse contacted an attorney but could not find Eddins "anywhere."
On cross-examination by the District Attorney, Eddins testified that he "didn't fly the coop," that he was trying to avoid "the authorities," but "not on this particular case," and that it took an "illegal wire tap" to finally "flush" him out.
The trial court charged the jury that "whenever flight of the Defendant is offered by the State, it may be considered by the Jury in connection of all of the other evidence in the case" and that "[y]ou would have to determine from the evidence whether there was a flight or not by this Defendant." The court did not charge the jury that evidence of flight was admissible or could be considered as tending to show consciousness of guilt. See McElroy, § 190.01(1).
"It is well settled that flight is a circumstance which the jury may consider even where the conduct of the defendant tending to show flight is weak and inconclusive." Bighamesv. State, 440 So.2d 1231, 1234 (Ala.Cr.App. 1983).
Review convinces this Court that Eddins received a fair trial and that his conviction should be affirmed.
AFFIRMED.
All Judges concur. *Page 1136