I respectfully dissent. The jury instruction at issue here was:
 "A defendant's flight to avoid prosecution may be considered by you as tending to show his consciousness of guilt."
(Emphasis added.)
The instruction, taken in its in context, merely states the relevance of "flight." The instruction speaks of "a defendant's flight" and states that it "may be considered," not that it "shall" be considered. If the judge was holding, or instructing the jury, that flight had been proven, then the jury would have been required to consider flight. The instruction does not direct the jury to accept or to reject the evidence of flight. The defense was allowed to introduce evidence indicating there was no flight; this fact is important. The jurors were still left by the judge's instruction to draw a conclusion if they believed the prosecution had proven flight. Therefore, the court was not requiring the jury to find that there had been a flight by the defendant. The jury had evidence on both sides to weigh on the issue of flight. The court did not err in giving the instruction, and thus no curative instruction was required.
There is no dispute that evidence of flight is a circumstance the jury may consider "even where the conduct of the defendant tending to show flight is weak and inconclusive." Eddins v.State, 501 So.2d 574 (Ala.Crim.App. 1986). See also, UnitedStates v. Levine, 5 F.3d 1100 (7th Cir. 1993) (evidence of defendant's flight one year after murders when defendant realized he would be indicted was admissible as probative of defendant's guilt). Further, I note that no Alabama cases have disallowed evidence of flight on the basis of remoteness. C. Gamble, McElroy's Alabama Evidence, § 190.01(4) at 383 (4th ed. 1991).
The evidence of flight was sufficient to go to the jury, especially since this is an area in which the courts and prosecutors have been given much leeway. The jury could reasonably have found that the reason Weaver took nearly eight months to go to Florida was that he was on parole and had to stay in Alabama, until July 27, 1990. He went to live in Florida with his niece and her husband in August 1990, just after his parole term ended. He had never lived with his niece before and had met her husband only once before. He asked if he and Tina Leslie, the mother of his child, could stay with his niece and her husband until he and Tina "got on their feet." He moved in, and only later did Tina and their child join him there. In the spring of 1991, the police telephoned him and told him he was a suspect in a murder investigation and asked him to return to Alabama. He became angry and did not return to Alabama. He continued to live in Florida until he was arrested there and extradited. The evidence of flight came both from evidence that the state introduced, as well as evidence Weaver introduced. The evidence was at least minimally sufficient to go to the jury, and the jury then weighed the evidence. The conviction should not be reversed on the basis that the court erred in allowing the jury to consider evidence of flight.